J. P. FELT, *Appellant,* v. CHARLES H. MORSE, *Appellee.*

Opinion Filed June 30, 1920.

Petition for Rehearing Denied July 31, 1920.

1.  Although time may not be of the essence of the original contract to sell and convey land, it may subsequently be made so by express notice given by a party to the contract who is not in default to the other party who is in default, requiring the contract to be performed within a stated time, which must be a reasonable time according to the circumstances of the case.

2.  Under a contract for the sale of land where no definite date has been agreed upon for the consummation of the contract, in order to constitute time of the essence of the transaction, the party to the contract entitled to insist upon perfor-

mance should fix a definite date in the future for performance, of which the other party thereto is duly notified, which affords to such party reasonable time within which to comply.

3. Where rescission of a contract is not by mutual consent, a party thereto who is not himself in default and who elects to rescind must, in order to affect rescission, give notice to the opposite party of his intention to rescind with reasonable time thereafter within which to comply with the contract.

4. Where the record title of a vendor seeking specific performance of an agreement to sell and convey land is defective, the lapse may be supplied by parol proof of adverse possession under color of title for the statutory period sufficient to establish ownership, even though the contract calls for a perfect title, but not a perfect record title.

5. From the time the owner of land enters into a binding contract for its sale he holds the same in trust for the purchaser and the latter becomes a trustee of the purchase money for the vendor, and being thus in equity the owner, the vendee must bear any loss which may happen and is entitled to any benefit which may accrue to such land in the interim between the agreement and the conveyance thereof to such vendee.

An Appeal from the Circuit Court for Seminole County, James W. Perkins, Judge.

Decree reversed.

*Cooper, Cooper & Osborne* and *Giles J. Patterson,* for Appellant;

*Massey & Warlow,* for Appellee.

WEST, J.—The controlling question in this case is whether, under the facts, the law will give to appellant the relief sought by him. It is so stated by counsel who bring the case here. There is little controversy as to the material facts.

The parties appellant and appellee, hereinafter referred to as vendor and purchaser respectively, entered into an agreement by which the vendor agreed to sell and the purchaser to buy certain described land in Seminole County upon which there was an orange grove, together with equipment, and subject to perfect title in the vendor. The contract was made, as appears from a telegram and letter in the record, on December 29 and 30 A. D. 1916. There was no formal written contract but the purchaser, at the vendor's request, deposited "in escrow" in a designated bank $1,000 of the purchase money and on January 1, 1917, entered into possession of the property.

In the early part of January, 1917, an abstract of the title of the land was delivered to the purchaser and such abstract was thereupon placed in the hands of his attorneys for examination who, in the latter part of the month, reported that the abstract showed certain defects in the vendor's title.

On the 3d, 4th and 5th of February following a freeze occurred which damaged the orange grove badly and rendered the property less valuable.

The objections to the vendor's title which were pointed out by the purchaser's attorneys were defective acknowledgments of two deeds in the chain of title of the vendor, but counsel for the respective parties seem to have agreed that the defects would be corrected by properly acknowl-

edged quit-claim deeds from the grantors in the defec-
tively acknowledged deeds and that the vendor's title
thereupon would become such as to meet the requirements
of the contract.

When these objections were called to his attention the
vendor proceeded to correct the defects. To do so he ob-
tained during the month of February a quit-claim deed
properly acknowledged from the grantor in one of the
defective deeds and procured an affidavit showing his
actual adverse possession of the property for the statu-
tory period, his object being to show a valid title by
adverse possession against the grantor in the other
defectively acknowledged deed.

On February 28 an employee of the purchaser who was
in possession of the property (who had prior to the con-
tract been in the employ of the vendor) informed the
representative of the vendor that the purchaser's agent,
who had represented him in making the contract, had
stated to him, the employee, that the purchaser intended
to rescind the contract and go no further with the trans-
action. Thereupon, on March 1, 1917, the vendor ten-
dered his deed for the property to the purchaser who
declined to accept it. In declining to accept the deed
the purchaser, or his representative, stated that he had
on that day written a letter to the vendor, copy of which
was then produced, in which he stated his reasons for
such action. The reasons given were delay in removing
the objections to the vendor's title to the property and
the change in the condition of the property occasioned
by the freeze.

The vendor, in the meantime having located the grantor
in the other defectively acknowledged deed, secured from
her a quit-claim deed for the property, properly acknowl-

edged, recorded the same, and on March 5, by letter, so advised the representative of the purchaser, stated that he had fully complied with the contract and insisted that payment for the property be made by the purchaser in accordance with the terms of the contract.

The purchaser declined to go any further with the transaction, whereupon the vendor brought suit for specific performance of the contract.

The decree was for the defendant.

The original agreement between the parties fixed no time for the delivery of the deed and the payment of the purchase money. There was no later express agreement fixing such time. Time therefore was not of the essence of the contract unless it was specifically made so by the conduct of the parties. If at any time during the negotiations time became, because of an act of either of the parties, of the essence of the contract, the other party was entitled to a reasonable time after notice of such act within which to perform the contract. The rule in such cases is stated in Asia v. Hiser, Admr., 38 Fla. 71, 20 South. Rep. 796. The court said: "Although time may not be of the essence of the original contract, it may subsequently be made so by an express notice given by a party who is not in default to the other party who is in default, requiring the contract to be performed or rescinded within a stated time, which must be a reasonable time according to the circumstances of the case."

The case of Forssell v. Carter, 65 Fla. 512, 62 South. Rep. 926, involved the same principle. In that suit an assignee of a contract to purchase certain land brought suit to require performance of the contract by the owner of the land who was a party to the contract. The contract

contained a provision that the time of payment should be an essential part of the contract. In considering the question of the right of the owner to declare a forfeiture of the purchaser's right to purchase the property under the contract upon his failure to make payment therefor upon the date fixed in the contract, the court said: "In such a case as this we believe the law to be that the vendor must give reasonable notice to the vendee that he will insist on payment as provided in the contract, and if he fails to do so before the date for payment he must fix a future time and give reasonable notice to the vendee in order that he may have an opportunity to comply. In this way alone can the vendor make time an essential part of the contract."

In the case under consideration the contention seems to be that although under the original agreement time was not of the essence of the contract, when the vendor on March 1, 1917, tendered his deed to the purchaser, before the objections of his counsel to the vendor's title had been fully met, and demanded payment of the consideration agreed to be paid for the property, that this act gave to the purchaser the right to then rescind the contract. This contention cannot be sustained. We have seen that the vendor had in a measure met the objections of the purchaser to his title. He had obtained a quit-claim deed properly acknowledged from the grantor in one of the defectively acknowledged deeds in his chain of title and had procured an affidavit showing his actual adverse possession of the property for the statutory period. This prima facie perfected his title. The contract did not call for a perfect record title. Freedman et al. v. Oppenheim, 187 N. Y. 101, 79 N. E. Rep. 841; Heller v. Cohen, 154 N. Y. 299, 48 N. E. Rep. 527; Conley et ux v. Finn, 171 Mass, 70, 50 N. E. Rep. 460. The parties presumably were act-

ing in good faith. The defects pointed out by counsel in the vendor's record title were susceptible of correction. The vendor seemed to be of the impression that what he had done was sufficient to meet the objections to his title, and it would be a harsh rule that would under the circumstances here presented require a vendor to tender a deed to property contracted to be conveyed at the peril of giving to the purchaser the absolute right *eo instanti* to declare all rights of the vendor under the contract forfeited.

The true rule we think is clearly stated by the Supreme Court of Alabama in the case of Elliott v. Howison, 146 Ala. 568, 40 South. Rep. 1018. The court said: "Where rescission is not by mutual consent, and the opposite party has not repudiated the contract, to affect rescission, notice of the rescission must be brought home to the opposite party and reasonable time must be given him after the notice to comply."

If it should be conceded that the offer to deliver the deed by the vendor to the purchaser on March 1, 1917, gave to the purchaser the right to then rescind the contract, upon his election so to do it was incumbent upon him to so notify the vendor and allow him a reasonable time thereafter within which to comply with the contract, and it cannot be said that March 5 following the day upon which the vendor's title was placed in such condition of record as to meet every criticism of the purchaser's counsel, was an unreasonable time for complying with the contract.

We conclude, therefore, that there was no sufficient warrant for the purchaser's refusal to perform the contract because of the time consumed by the vendor, ap-

proximately sixty days, in so perfecting his title to the property as to meet the objections raised thereto.

The other reason assigned by the purchaser for his refusal to perform the contract was the damage to the orange grove by the freeze and the consequent depreciation in value of the property. We have seen that possession of the property was taken by the purchaser on January 1, 1917, immediately after the contract was made, and that the freeze occurred on February 3, 4 and 5, while the purchaser was in possession of the property; that he undertook to rescind the contract on March 1 and declined to accept the deed tendered him on that day and again refused to make payment for the property a few days later, although advised at the time that his objections to the title had been satisfactorily met. It is not denied that the freeze had damaged the orange grove and that the property was worth less after the freeze than it was at the time the contract was made. The question then is upon whom must the loss fall. A consideration of the relation of the parties after the contract had been entered into will be helpful in determining this question.

In the case of Insurance Company of North America et al v. Erickson, 50 Fla. 419, 39 South. Rep. 495, this court passed upon the question of the legal effect of a contract similar to the one under consideration. The question there was whether one who had contracted to sell certain lots of land was the "unconditional and sole" owner of such lots within the meaning of that term as employed in a fire insurance policy written upon certain buildings upon the lots. That case differed from this in that there the vendor retained possession of the property contracted to be sold; here possession of the property

11—Vol. 80

contracted to be sold was delivered to the purchaser when the contract was made. The court said: "Upon the execution and delivery of the contract of sale set up in the defendant's plea the vendor Erickson became the holder of the legal title in trust for his vendee Burch as security for the deferred purchase price due from the latter to the former, and the vendee Burch held the purchase price as trustee for his vendor. 2 Story's Eq. Juris. (13th ed.), Sec. 789. We do not think that the retention of possession of the land by the vendor Erickson makes any material difference in his *status* as owner so as to affect the question under discussion. He had the right to stipulate, as he did do, for the retention of possession until the purchase money was paid, but this did not render the transaction any the less an unqualified sale of the property on his part and purchase thereof by his vendee. This contract of sale and purchase having been entered into prior to the issuance of the policies of insurance sued upon, and being in full force and effect at the time they were issued, renderd the said policies void according to their express terms, and they cannot be recovered upon."

That the contract under consideration was for a "perfect title" and defects in the record title were found do not forbid the application of this principle. The defects were not vital. The vendor was proceeding with reasonable dispatch, with the seeming acquiescence of the purchaser in a manner apparently satisfactory to him, and with reasonable assurance of success to correct such defects, and, as we have seen, did, within a reasonable time, so perfect his record title as to meet the objections of the purchaser.

In this situation we think the rule announced by the

Supreme Court of Maryland in the case of Brewer v. Herbert, 30 Md. 301, 96 Am. Dec. 582, is applicable. After citing certain English cases in support of its holding, the court said: "From these and other authorities of equal weight, announcing the maxim that equity regards as done that which was agreed to be done, is deduced as the established doctrine in equity, that from the time the owner of an estate enters into a binding agreement for its sale he holds the same in trust for the purchaser, and the latter becomes a trustee of the purchase-money for the vendor, and being thus in equity the owner, the vendee must bear any loss which may happen, and is entitled to any benefit which may accrue to the estate in the *interim* between the agreement and the conveyance."

In Pomeroy's Specific Performance, page 397, the rule is stated as follows: "The doctrine is fully supported by the American decisions, that the purchaser must sustain any loss happening to the subject-matter between the date of concluding the agreement and that of the conveyance; and, on the other hand, is entitled to any increase or gain which may arise during the same period. (1) Thus, where a manufactory had been sold at auction by order of the court, and between the sale and the confirmation thereof, the machinery and fixtures were carried off by trespassers, the purchaser was still compelled to specfically perform his agreement. (2) A rise in value of the subject-matter, between the contract and the carrying into effect, resulting from a change in circumstances or discoveries, and the like, enures to the benefit of the purchaser, and is no ground for the vendor's refusing to perform, it being understood, of course, that the agreement was fair in its inception, without any fraud, or any feature which equity calls mistake; (3) nor will a fall in the value, even though sudden and unforeseen, enable

the vendee to resist a specific execution at the suit of the vendor."

There is nothing to suggest any element in this transaction that would vitiate the contract. Both parties, so far as the record discloses, were familiar with the property and acquainted with its value. It is a matter of common knowledge that the value of an orange grove in Seminole County may during the winter season be affected by cold. The purchaser is charged with knowledge of this fact. That the grove on the property purchased by him was so affected so soon after its purchase is a misfortune. It was not, however, the fault of the vendor. The purchaser was in possession. If the grove could have been protected it was his duty to protect it and its changed condition resulting from the freeze is no sufficient warrant for his repudiation of his contract to purchase.

From what we have said it follows that the decree must be reversed.

Browne, C. J. and Taylor, Whitfield and Ellis, J. J., concur.