**B. A. MICHAELS v. ALBERT PICK & CO., a New York Corporation, et al.**

30 So. (2nd) 498
May 13, 1947

January Term, 1947
Special Division A

878

*A. C. Franks,* for appellant.

*Webster G. Wallace,* for appellees.

CHILLINGWORTH, Associate Justice:

This is an appeal by plaintiff from a final decree dismissing an amended bill in a suit to quiet title, after testimony had been taken on the merits.

The special master filed a comprehensive report, which contained findings of fact as follows:

·"This is a suit to quiet title to two lots in McAllister Terrace, a subdivision of Dade County, Florida. The Court has jurisdiction of the parties and the subject matter.

"The cause is at issue upon plaintiff's amended bill of complaint, filed April 4, 1945, and the answer and amended answer of the defendants, filed, respectively, December 3, 1945, and February 20, 1946.

"The testimony and the evidentuary exhibits establish the following facts: On September 28, 1925, by an unrecorded instrument in writing, plaintiff agreed to purchase Lot 8, Block 9, McAllister Terrace, and the then owners of the property agreed to sell the lots to the plaintiff on a deferred payment plan. H. R. Wallace, one of the defendants, was the agent of the owner in the sale of this property. Thereafter, on November 12, 1925, H. R. Wallace and his wife assigned to the plaintiff a contract for the purchase of the same property made by E. C. McAllister, owner, to one Blackwell, and this assignment was not recorded. On September 30, 1925, one Lauton and his wife assigned to the plaintiff the contract for the purchase of Lot 9, Block 13 of McAllister Terrace between E. C. McAllister, the owner, and one Grentner, the purchaser. This assignment was not recorded. The evidence indisputably shows that plaintiff made the payments required by the contract on both lots and, in May, 1929, received a warranty deed from E. C. McAllister to both lots. This deed is dated '_____ day of May, A. D. 1929.' However, the grantor's acknowledgment was taken May 21, 1929. This deed was recorded in Book 1318, page 535, June 29, 1929.

The plaintiff paid taxes on both lots each year until 1941 when, upon tendering his taxes, the check for same was returned to him by the Clerk with the information that someone else was claiming title to the property and had paid the taxes.

"On May 24, 1929, the defendant, Albert Pick & Co., recovered a judgment against E. C. McAllister and others in the Circuit Court of Dade County for $7,598.64 and costs. The judgment was recorded the same day in Circuit Court Minute Book 41, page 55. An execution was issued on the judgment and on December 6, 1930, notice of the Sheriff's levy on the property involved in this suit and other property was made and recorded. Pursuant to the levy and sale, the Sheriff issued his deed to the judgment creditor January 5, 1931, and it was recorded January 24, 1931. A corrective Sheriff's deed to the judgment creditor was made January 5, 1931, and it was recorded June 8, 1931. Thereafter, by assignment, deeds and divers proceedings, title to the property was conveyed to the defendant I. & I. Holding Corporation, which, in turn, deeded Lot 9 of Block 13 to the defendant, W. H. Owings (but named as W. H. Owens in the suit), and thereafter, on February 7, 1939, W. H. Owens entered into an agreement with the defendants, Harvey R. Wallace and Webster G. Wallace, to quiet title to Lot 9, Block 13 and other property, in consideration of a fifty per cent interest therein. The record does not disclose that the two Wallaces have any other interest in the property than the last mentioned agreement."

The special master, apparently emphasizing the fact that the contract of plaintiff, as well as the deed of plaintiff, was unrecorded at the time the judgment was entered, acted upon authority of Feinberg v. Stearns, 56 Fla. 279, 47 So. 797. He recommended a decree for defendants, on the theory that the judgment creditor had acquired its lien without notice of the prior unrecorded deed and would be entitled to protection as against the unrecorded conveyance. The Court approved the report of the master and entered a final decree for defendants.

The abstract of title which was received in evidence

(Items 98 to 102, inclusive) indicates that McAllister, who was the common source of title, made agreements for deeds concerning the two lots involved in this suit. One designated Blackwell as vendee. One was assigned to Lauton, by Grentner, the original vendee. The Blackwell agreement was assigned by Blackwell to Wallace. These agreements and the assignments were dated and filed for record in 1925. Wallace, on September 28, 1925, agreed to convey one lot to Michaels (Plaintiff's Exhibit 2). It further appears (Plaintiff's Exhibits 3 and 4) that Wallace and Lauton, in 1925, made assignments of their agreements to Michaels, the plaintiff. These last assignments and the agreement of Wallace were not recorded. Michaels had made payment in full to McAllister for the purchase price of the property before the judgment was entered. The deed to Michaels, though undated, except "_____ day of May, A. D. 1929," was acknowledged prior to the judgment. It was not, as the master properly found, recorded until about a month after the judgment had been rendered.

So we find from the entire record that while plaintiff had failed to record his own agreement and his deed, there were on record valid agreements for deed through which plaintiff claimed, as to which original agreements and assignments the judgment creditor had constructive knowledge, when the judgment was entered, May 24, 1929.

It has been held, Aycock Brothers Lumber Company v. The First National Bank of Dothan, 54 Fla. 604, 45 So. 501, that in equity, where the relation of the vendor and vendee has been established by a contract to convey legal title, upon payment of the purchase price, the vendee is regarded as the real beneficial owner. The vendor holds the legal title as trustee, and when the terms of the contract are complied with he is bound to convey. The vendor holds legal title as trustee. Miami Bond & Mortgage Co. v. Bell, 101 Fla. 1291, 133 So. 547.

The judgment creditor cannot subject property held by judgment debtor as trustee to the satisfaction of a judgment merely because without knowledge of the claim of cestui que trust. The owner of the beneficial interest in property, not

shown of record, may be estopped to assert interest against a bona fide judgment creditor or subsequent purchaser when the latter may reasonably have acquired substantial rights on the faith of the record. The First National Bank of Arcadia v. Savarese, 101 Fla. 480, 134 So. 501. But in the instant case, Albert Pick & Co., judgment creditor, did not acquire any substantial rights on the faith of the record title being in McAllister, nor can it be asserted that Albert Pick & Co. was without knowledge of the outstanding contracts of McAllister, for the contracts had appeared of record since 1925.

This court has held, in Latin American Bank v. Rogers, 87 Fla. 147, 99 So. 546, that the title of an owner who has entered into an executory contract to convey land, is subject to levy and sale as "lands and tenements" under execution. It has also further held, in Miller v. Berry, 78 Fla. 98, 82 So. 764, that the lien of a judgment under the statutes of Florida is effective only as to the beneficial interest of the judgment debtor in real estate.

In an opinion prepared by Justice Whitfield, this Court stated, in Jacobs v. Scheurer, 62 Fla. 216, 57 So. 356:

"Under the statute a judgment may be a general lien on the defendant's real estate without reference to the record on his title, and land actually conveyed before the judgment is rendered is not affected by the lien of the judgment, where the liability on which the judgment was recovered had no relation to the property and accrued subsequent to its conveyance by the judgment debtor."

It seems clear that land which has been conveyed prior to the rendition of a judgment, in compliance with valid agreements for deed appearing of record and for which full consideration has been received, was not subject to the lien of a judgment thereafter rendered against the vendor, even though the deed consummating the transactions embraced in the agreements for the deeds was not recorded at the time of the rendition of the judgment, nor within the actual knowledge of the judgment creditor. 31 Am. Jur., page 27, Sec. 320, 49 C. J. S. 918, Sec. 480, and cases cited therein.

Appellee contends that the recording statutes, F.S.A. 691.01 and 695.11, protect him, but he overlooks the fact that he was a creditor with notice, rather than without notice, for the record disclosed that the judgment debtor had executed agreements for deeds, under which she had sold the land several years prior to the rendition of the judgment under which he claims. Plaintiff's failure to record his contract and deed did no harm to the judgment creditor, for the judgment lien only affected the interest of McAllister, the vendor, and not the interest of vendees and their assignees.

Hence this Court concludes that the lien of a judgment against a vendor does not attack to the mere legal title remaining in the vendor where an agreement for a deed had been executed and duly recorded, and all of the purchase money paid, at the time the judgment was entered.

This is another of those unfortunate instances commonly resulting in losses and litigation, wherein a business man failed to procure legal counsel at the onset in handling the legal details of a real estate transaction and entrusted them to a "real estate dealer." The real estate dealer failed to have the title examined by legal counsel, and failed to promptly record the deed when it was delivered by the grantor. Except for the fact that the original agreements had been placed on record—though plaintiff did not know this at the time—plaintiff might have lost his entire investment in the property. If plaintiff had only exercised ordinary prudence in having his title examined when he purchased the property, this litigation, and possibility of loss, could easily have been averted.

The final decree is reversed, with directions to enter a decree for plaintiff.

Reversed.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.