WILLIS, BEN C., Associate Judge.
The appellants Mannion, husband and wife, were defendants in the trial court in a chancery suit brought against them by Frank Owen and wife, who are the appel-lees here. The plaintiffs Owen sought to “foreclose” the rights of the defendants as vendees in possession under a contract of purchase and sale of the good will of a business known as Owens Flower Shop together with the real property on which it is located and certain personal property consisting of fixtures, equipment, etc. It is alleged in the complaint that the purchase money installments were not paid as contracted and, pursuant to an acceleration clause in the contract, the entire unpaid balance consisting of some $35,100 principal together with $3,290 in interest, is declared due. A restraining order and appointment of a receiver were prayed, which the chancellor denied in. interlocutory proceedings. As an alternative to the “foreclosure” of the rights under the contract of the vendee defendants, the vendor plaintiffs sought an adjudication of a forfeiture of the contract and a declaration that it is null and void and that it be cancelled and ordered stricken from the record.[1] It is also prayed that the defendants and all claiming under them “be forever estopped from claiming any interest or demands in and to the said property.”
The defendants interposed certain defensive motions which the chancellor denied, after which there was filed an answer[2] which denied, specifically or by way of disclaiming knowledge of the allegations, all of the matters in the complaint except that defendants are in possession of the real property in question. Incorporated in the answer is also a counterclaim which states:
(1) That plaintiffs were the owners of the property on March 20, 1957, the date of the execution of the contract;
(2) Prior to execution of the contract the plaintiffs made false representations to defendants as to the condition of the buildings, the gross income of the business and the condition and capacity of the electric system;
(3) The expenditure of more than $10,000 to correct the conditions so misrepresented;
(4) The payment of $6,407 on account of the contract;
(5) That plaintiffs have made false statements concerning defendants to clientele and business associates for the purpose of hurting their business and otherwise injuring them.
The counterclaimants (defendants) offer to account for and return the rents and profits of the business since they went into possession and to quit claim their interest to the plaintiff in return for reimbursement of payments made on the contract and payment by plaintiffs for damages resulting to defendants from the alleged false representations. They pray for rescission of the “entire transaction” and return of the parties to' status quo; for an accounting of monies paid on the contract and return of same to defendants; accounting of rents, issues and profits of the business; and damages for fraudulent misrepresentations relating to the subject of the contract and for the false and malicious statements made to defendants’ clientele and business associates. They also pray for an injunction, pending final decree, restraining the plain *819 tiffs from coming on the premises or interfering with the business.
The plaintiffs (counterdefendants) moved to dismiss the counterclaim, but the chancellor has not ruled on this motion.
The plaintiffs moved for summary final decree and the affidavit of plaintiff Marie Owen in support of the motion sets forth the execution on March 20, 1957 of the written contract[3] by the parties; the default in payment of installments of the purchase money; request of payments of sums in default; election to foreclose the agreement; and request to defendants to remove from the premises and their refusal. A counter-affidavit by defendant Thomas Mannion merely states that plaintiffs falsely and fraudulently induced the execution of the contract and as a result defendants are entitled to credits for large sums of money on the contract which plaintiffs refuse to recognize. Also set forth in this affidavit is the statement that defendants have “offered to do equity and return all parties to their original position” and that they are entitled to rescission of the contract and restoration of sums paid thereon. The statements in this counter-affidavit are mere conclusions of the affiant and set forth no specific facts to contradict the facts, sworn to in plaintiff’s affidavit, of the execution of the contract, its terms, and default in payment of the purchase money.
After a hearing on this motion, the chancellor entered what is designated as “summary final decree”. In it is a declaration that the contract in question is null and void and the defendants (and any person claiming under them) are “estopped” from claiming any interest or demands in the property in question. The plaintiffs are found to be entitled to retake possession of the property and defendants are ordered to surrender same to them. The record of the contract was ordered to be stricken by the Clerk of the Circuit Court. Costs were assessed against defendants. However, it was also set out in a separate numbered paragraph: “This is without prejudice as to the filed counterclaim”.
The chancellor apparently deemed that the issues created by the complaint and the answer thereto, which merely denied most of the allegations of the complaint, constituted a controversy separable from and independent of any potential issues arising from the counterclaim. The motion to dismiss the counterclaim is not ruled upon specifically or inferentially. The “summary final decree” specifically recites that its terms are without prejudice to the counterclaim. The chancellor was also obviously of the view that there is no genuine issue on the facts of the execution of the contract; its terms; its breach in not paying purchase money installments when due; acceleration of maturity of all unpaid sums pursuant to option in contract; and demand of payment and refusal. Upon these facts it was concluded the plaintiffs were entitled to have the contract declared forfeited, the rights of defendants thereon terminated completely, and the property and all incidents of ownership, including possession, restored to the plaintiffs.
It is significant that the chancellor chose to treat the contract and all rights of defendants thereunder as peremptorily at an end rather than to have granted a “foreclosure” of the contract with the incidents of ascertaining the sums due the plaintiffs under the contract, according defendants the opportunity of redeeming their rights by paying the sums owed within a period to be fixed in the order, and providing that in default of such payment the interest of the defendants be sold at public sale, etc. By taking the first alternative there is no opportunity left to defendants to retain or redeem any rights in the property involved. Under the foreclosure method there would be.
*820 Under the facts shown by the pleadings[4] and affidavits, the chancellor was clearly justified in reaching the conclusion that the instrument had been formally executed by the parties and that the terms of payment of the purchase price, as specified in the instrument, had not been met by the defendants. Under such circumstances, a vendor’s lien in behalf of the sellers for the unpaid specified purchase price would exist and be enforceable. Adkins, Florida Real Estate Law and Procedure, Vol. 1, pp. 162-163. There would thus be no genuine issue on the facts necessary to entitle the plaintiff to either a “foreclosure” of the contract or some other appropriate relief, unless there is some circumstance which operates to render those undisputed facts ineffective to support the normal equitable consequences.
The chancellor was also confronted with the circumstance that the defendants claimed no rights under the written contract. In the answer they had denied that the alleged contract had been executed. They admitted they were in possession of the property but failed to state under what right. In the counterclaim they took the position that the written contract was a nullity because of fraudulent misrepresentations. In short, in their counterclaim they have disavowed all rights under the agreement of record and have sought to recover all sums paid to plaintiffs, plus other amounts claimed as damages resulting from fraudulent misrepresentation and also for defamation. They have sought a complete restoration to the so-called status quo. Apparently the chancellor deemed that they had disavowed the contract and thus had waived or abandoned any rights under the written instrument. Accordingly he treated the contract as a nullity, deemed payments made as forfeited or waived, and restored the possession to the legal title holder but without any right to collect further sums for rent or use of the property while possessed by defendants. On the other hand, he left open for later disposition any rights and remedies of defendants asserted or assertable in their filed counterclaim.
It appears to he well established that when a contract to sell real estate is executed the equitable title is vested in the vendee and the vendor holds the naked legal title as security for the payment of the purchase price. Hull v. Maryland Casualty Company, Fla., 79 So.2d 517; Michaels v. Albert Pick Co, 158 Fla. 877, 30 So.2d 498; Felt v. Morse, 80 Fla. 154, 85 So. 656. The recent decision of this court, Tingle v. Hornsby, Fla.App, 111 So.2d 274, recognizes this principle as having long been the law and that the vendee, under such a contract, becomes the real beneficial owner with the legal title held by the vendor as trustee with obligation to convey upon compliance with the terms of the contract.
The breach of such a contract by the vendee, such as failure to pay the purchase price when due, does not ipso facto operate to effect a forfeiture of the contract and a termination of the vendee’s rights thereunder, unless the contract expressly so provides or unless time is expressly made of the essence in the contract. 55 Am.Jr. (Vendor and Purchaser, Sec. 617) pp. 1010-1011.
The contract in question here only provides for forfeiture “as liquidated damages” of the initial deposit of $4,000 in the event of the failure or refusal of the ven-dees to consummate the transaction within the period of time for closing, provided the title to the property is free and clear of *821 encumbrances except current taxes. The acceleration clause provides an option to the vendors to declare, in event of default of an installment, the “whole sum due under this contract” immediately payable “and shall upon such election have the right to immediately foreclose this contract”. (Emphasis supplied.)
Therefore the failure to make the payments does not in and of itself effect a termination of the contract and the dissolution of all rights in the vendee. The contract does not in terms provide for such a rescission or forfeiture, but on the contrary does provide for “foreclosure” for such a default.
In cases of such default, it appears that the vendor’s lien consists of the right to enforce payment of the unpaid price by suit in equity against the vendee’s equitable estate. Aycock Bros. Lumber Co. v. First National Bank of Dothan, 54 Fla. 604, 45 So. 501, 506. In the case last cited, the court, remarking on the vendor’s remedies, said:
“and both in England and America the vendor’s equitable remedy consists in a suit in the nature of a strict foreclosure, by which the vendee is decreed to pay the price within a limited time, and in default of such payment the vendee’s equitable estate is foreclosed and sold to pay the purchase price; * * * »
Also, in Edmons v. Gracy, 61 Fla. 593, 54 So. 899, 900, it was said:
“Where a contract for the sale of land is in the form of a bond for title given by the vendor, conditioned on the performance of the vendee’s promises, a court of equity may upon a breach of the contract by the vendee foreclose his rights thereunder, and in granting appropriate relief may, at the instance of the vendor, who retained title, order a sale of the property, where it will not be inequitable to the vendee.”
In harmony with the propriety of foreclosure in such cases is Schmidt v. Kibben, 100 Fla. 1684, 132 So. 194. See also: Marion Mortgage Co. v. Grennan, 106 Fla. 913, 143 So. 761, 87 A.L.R. 1492.
It would thus appear that the chancellor erred in the remedy he administered in behalf of the plaintiffs by peremptorily decreeing rescission of the contract and ordering it be stricken from the record. With regard to the possession of the property, the chancellor is vested with discretion to make such orders for the care, maintenance and preservation of the property as would be necessary to protect it from deterioration or waste. If placing the plaintiffs in possession would accomplish this and the interests of defendants are at the same time adequately safeguarded, then such action would not be inconsistent with strict foreclosure proceedings.
Furthermore, it was error for the chancellor to award plaintiffs a “final” decree prior to adjudication of the cause of action alleged in the counterclaim. Inherent in a decree ordering strict foreclosure of the contract prior to the conclusion of the entire controversy would be the finding that the contract was valid and binding in every respect. The validity of the contract is the very issue raised by the counterclaim to which a motion to dismiss has been directed, but not yet passed upon by the chancellor. We do not mean that anything stated herein should be construed as expressing an opinion with respect to the sufficiency of the counterclaim, nor do we assume that the cause of action sought to be alleged therein can or will be proved. If, however, the counterclaim is ultimately held to be sufficient and upon trial is sustained by a preponderance of the evidence, the court will necessarily be required to find that the contract in question is void and unenforceable. If such finding is made, then no foreclosure of the contract may be decreed. If on the other hand the defendants fail to sustain the cause of action sought to be *822 alleged by their counterclaim, only then will the court be authorized to enter a decree ordering strict foreclosure of the contract in accordance with the views herein-above set forth.
The summary decree appealed is accordingly reversed and the cause remanded for further proceedings consistent with the views herein expressed.
WIGGINTON, C. J., and STURGIS, J., concur.

. The contract was alleged to have been recorded in the public records of Volusia County.

. The answer also incorporated a motion to strike each paragraph of the complaint and each sentence, clause, phrase and word in such paragraphs, “separately and severally”. This motion does not appear to have been specifically ruled on but inferentially it is denied by entering the summary decree.

. A copy of the contract is attached to the complaint. There appears to be no issue but that such copy is a true copy of the original.

. The answer containing the denials of allegations of the complaint (except possession of defendants) was sworn to, along with the counterclaim. However, the court denials of allegations are in direct contradiction to many of the allegations of the counterclaim. The chancellor was justified in concluding that the sworn blanket denials of the answer did not create genuine issues of the facts supported by specific statements under oath in the complaint and affidavit.