SANDERLIN, Judge.
Appellants challenge an order which granted appellees' motion for directed verdict and dismissed appellants’ action for specific performance of a real estate purchase contract and damages. For the reasons stated below, we reverse and remand for further proceedings.
The record reveals the following facts.
On March 11, 1982, and through several assignments, appellant McNeal became the contract purchaser of a condominium unit to be built by appellee Marco Bay Associates (Marco Bay). The assignment contained a “time is of the essence” clause. A certificate of occupancy was issued for McNeal's unit on March 29, 1982.
In a letter dated April 2, 1982, Marco Bay’s attorney advised McNeal that pursuant to paragraph 5 of the purchase contract, closing must take place within fifteen days of the issuance of the certificate of occupancy. The letter set a closing date of April 13, 1982.
*780 During this period it was difficult to obtain financing for condominiums and Marco Bay granted many closing extensions. On June 17, 1982, Marco Bay issued an internal memorandum approving an extension for the McNeal closing.
Conversations between McNeal and Marco Bay’s representatives resulted in oral agreements that McNeal would not have to close until Marco Bay obtained permanent financing. Subsequently, the parties agreed that McNeal could wait until preparation of his 1982 federal tax return before applying for a mortgage. On November 9, 1982, Marco Bay obtained permanent financing and on January 30, 1983, McNeal filed his 1982 federal tax return.
On March 23, 1983, McNeal assigned the purchase contract to appellant Atlantic Liquors, Inc. (Atlantic), of which McNeal is president. The assignment contained a “time is of the essence” clause and specified a closing date of April 15, 1983. Marco Bay approved this assignment. On the same day, Atlantic Liquors applied for financing.
By letter dated June 3, 1983, appellee Robert D. Stakich, one of Marco Bay’s general partners, advised McNeal that Marco Bay would contribute toward loan points. The letter concluded: “We are hopeful that closing is moving forward, and will take place in a timely manner.”
In another letter dated July 1, 1983, Marco Bay’s attorney notified McNeal that Marco Bay was enforcing paragraph 13 of the purchase contract which provided in pertinent part:
13. DEFAULT. Should the Purchaser fail to close within the time period set forth above, then Seller shall have the right and option to cancel this Purchase Agreement for such default and to retain the aforesaid deposit as full and liquidated damages for such default by Purchaser.
On August 18, 1983, McNeal made demand on Marco Bay to close, which Marco Bay refused to do. Thereafter, McNeal and Atlantic brought the present action against Marco Bay and its general partners, DeBartolo and Stakich, for specific performance, damages, and return of deposit monies.
At trial, McNeal testified that Stakich told him that Marco Bay’s refusal to close was based upon economic reasons. McNeal, a licensed realtor, also stated that on the date Marco Bay cancelled the contract, the fair market value of the unit was $26,000 over the original purchase price. Stakich testified that Marco Bay was ready, willing, and able to close in July of 1983, but he did not know whether the closing documents had been prepared at that time. The testimony is conflicting on whether McNeal was ready to close when he received the July 1 letter from Marco Bay’s attorney, but it is clear that he was ready to close in August 1983.
At the close of plaintiffs’ case, Marco Bay moved for a directed verdict on all counts. In granting the motion, the trial court apparently found that Marco Bay was justified in cancelling the purchase contract because McNeal and Atlantic had defaulted by not timely closing, and that Marco Bay had not waived a “time is of the essence” requirement or a demand to close.
On appeal, appellants challenge the trial court’s order of dismissal only as it relates to the damages claims in counts two and three of their complaint. Our opinion, therefore, is limited to those claims.
Initially, we observe that the purchase contract to which McNeal and Atlantic agreed by assignment did not make time of the essence. Marco Bay contends that the “time is of the essence” clause in the respective assignment agreements somehow applies to the purchase contract. This contention is without merit. Those clauses only made time essential to the performance of the assignment agreements, and not the purchase contract that was assigned pursuant to those agreements. Furthermore, Marco Bay was not a party to the assignment agreements.
Although time was not essential to performance of the purchase contract, it *781 was, nevertheless, material. As such, Marco Bay could have exercised its option to cancel the contract pursuant to paragraph 13 had it given McNeal and Atlantic reasonable notice and fixed a reasonable time for performance of the contract. See Chabot v. Winter Park Co., 34 Fla. 258, 15 So. 756 (1894); National Exhibition Co. v. Ball, 139 So.2d 489 (Fla. 2d DCA 1962). Marco Bay contends that its April 2, 1982, letter to McNeal which set a closing date of April 13, 1982, was such notice. While generally we would agree with this contention, we, nevertheless, find that Marco Bay’s subsequent actions amounted to a waiver of the requirement to timely close.
A waiver is an intentional or voluntary relinquishment of a known right. Continental Real Estate Equities, Inc. v. Rich Man Poor Man, Inc., 458 So.2d 798 (Fla. 2d DCA 1984). Generally, a waiver of a contractual right must be supported by consideration, Mark v. Hahn, 177 So.2d 5 (Fla. 1965), but may be inferred from conduct when a party to the contract is put off guard and lead to believe, to his detriment, that a right has been waived. Mark v. Hahn; Thomas N. Carlton Estate, Inc. v. Keller, 52 So.2d 131 (Fla.1951); L’Engle v. Overstreet, 61 Fla. 653, 55 So. 381 (1911); Faussner v. Weaver, 432 So.2d 100 (Fla. 2d DCA 1983).
In the present case, two months after the initial closing date of April 13,1982, Marco Bay granted McNeal an extension. Thereafter, Marco Bay agreed to help McNeal by seeking financing and not requiring McNeal to apply for a mortgage until after filing his 1982 tax return. Still later, Marco Bay agreed to the assignment from McNeal to Atlantic, which it knew or should have known would further extend closing. We believe that these actions lead McNeal and Atlantic to believe that Marco Bay had waived its right to timely close. The detriment suffered by McNeal and Atlantic in reliance on Marco Bay’s conduct was the loss of the increased value of the condominium when Marco Bay terminated the contract on July 1, 1983.
Additionally, Marco Bay’s June 3, 1983, letter advising that it would contribute toward loan points and hoped “closing is moving forward, and will take place in a timely manner” did not make time essential to performance. When time has not been made essential to the contract or has been waived, the party entitled to insist on performance must fix a definite date in the future for performance and must notify the other party, giving a reasonable time within which to comply. See Felt v. Morse, 80 Fla. 154, 85 So. 656 (1920). There was no definite date given for performance in the June 3 letter. For the same reason, the July 1, 1983, cancellation notice cannot be deemed as making time essential because a reasonable time within which to perform was not given to McNeal and Atlantic. See National Exhibition Co. v. Ball.
Accordingly, we find because Marco Bay waived timely performance of the contract and failed to give McNeal and Atlantic notice of a reasonable time for performance, that Marco Bay’s July 1 cancellation letter was a material breach of the contract, for which McNeal and Atlantic could seek the damages claimed in counts two and three of their complaint, i.e., loss for benefit of the bargain and return of deposit monies. See Gassner v. Lockett, 101 So.2d 33 (Fla.1958).
Marco Bay additionally contends on appeal that McNeal and Atlantic did not offer proof of damages or of Marco Bay’s bad faith, which would support a claim for benefit of bargain damages. See id. at 34. This point was not made before the trial court. After reviewing the record in a light most favorable to McNeal and Atlantic, we find there was evidence from which the trier of fact could conclude that the value of the condominium had increased $26,000, and further, that Marco Bay had acted in bad faith by cancelling the contract after the value of the condominium had so risen. See, e.g., Shelter Corp. of Canada, Ltd. v. Bozin, 468 So.2d 1094, 1097 (Fla. 2d DCA 1098), (seller’s refusal to close for own pecuniary gain was proof of bad faith, and as such, seller would not be *782 entitled to usual damages in action for specific performance). Of course, this evidence may be rebutted when Marco Bay presents its case.
Therefore, we reverse the trial court’s order of dismissal, with respect to counts two and three of the complaint, and remand for further proceedings consistent with this opinion.
SCHEB, A.C.J., and RYDER, J., concur.