In re John Logan McCALL d/b/a McCall Auto Parts, Debtor. (Two Cases)

John Logan McCALL, Appellant,

v.

BARNETT BANK OF COLUMBIA COUNTY, Appellee. (Two Cases)

Bankruptcy Nos. 86–173–Civ–J–14, 85–482–BK–J–GP, 86–812–Civ–J–14 and 85–482–BK–J–GP. Adv. No. 85–178.

United States District Court, M.D. Florida, Jacksonville Division.

Feb. 13, 1987.

---

Lansing Roy, Keystone Heights, Fla., for appellant.

Robert J. Winicki, Jacksonville, Fla., for appellee.

## OPINION

SUSAN H. BLACK, District Judge.

These cases came before the Court upon appeals from the United States Bankruptcy Court for the Middle District of Florida. Case No. 86–173–Civ–J–14 presents an appeal from the bankruptcy court's Memorandum Order Granting Defendant's Motion For Summary Final Judgment, entered February 11, 1986, in Adversary No. 85–178. That order is reported at 58 B.R. 54. Case No. 86–812–Civ–J–14 presents an appeal from the bankruptcy court's Order entered June 4, 1986, denying the debtor's motion to avoid a judicial lien. On August 25, 1986, the Court granted appellant's Motion For Consolidation Of Appeals, finding that they involved common questions of law and fact. The Court heard oral argument on the issues presented in the appeals on November 13, 1986.

The facts relevant to these appeals are not in dispute. On May 2, 1979, appellant, John Logan McCall [hereinafter "Logan McCall"], and his father, John Lowell McCall [hereinafter "Lowell McCall"], acquired certain real property in Columbia County, Florida as joint tenants. The deed to this property was recorded in the Public Records of Columbia County on May 4, 1979. From that date until the present Logan McCall resided on the subject property. On December 23, 1979, Lowell McCall transferred his interest in the property to Logan McCall. No deed reflecting this transaction was recorded at the time.

Several years after this transaction, appellee Barnett Bank of Columbia County [hereinafter "Barnett"] obtained a deficiency judgment in state court against Lowell McCall in the amount of $348,925.24. This judgment was not related to the subject property. Barnett recorded a certified copy of this judgment in the Public Records of Columbia County on December 5, 1984.

Barnett had no notice of the prior transfer from Lowell McCall to Logan McCall.

On January 15, 1985, a writ of execution was issued as to Lowell McCall's interest in the subject property and, on July 3, 1985, the Sheriff of Columbia County levied on this interest. On September 6, 1985, five days before a scheduled foreclosure sale of Lowell McCall's interest, Logan McCall recorded the 1979 warranty deed from his father. On September 11, 1985, Barnett purchased Lowell McCall's interest at the foreclosure sale for $100.00.

Logan McCall filed his petition for relief under Chapter 11 of the Bankruptcy Code on June 17, 1985. On his bankruptcy schedules of assets, he listed all of the subject property as exempt under Florida homestead laws. On September 9, 1985, Logan McCall initiated Adversary Proceeding No. 85-178 in bankruptcy court to determine the validity, priority and extent of Barnett's interest in the property. After a hearing on Barnett's Motion For Summary Judgment, the court entered an order on February 11, 1986, holding that under Section 695.01, Florida Statutes, Barnett's judgment lien on Lowell McCall's interest had priority over the unrecorded deed of Logan McCall. This order is the subject of the appeal in Case No. 86-173-Civ-J-14.

On April 9, 1986, Logan McCall filed a motion to avoid Barnett's judgment lien, arguing that Barnett's lien was superceded by his homestead interest in the property. On June 4, 1986, after a hearing on the motion, the bankruptcy court entered an order denying the motion on the grounds that "Barnett has not levied upon any ownership interest of John Logan McCall in the real property" and that "[t]he claim of John Logan McCall to ownership of the entire real property has ... been determined to be without merit in the prior adversary proceeding." This order is the subject of the appeal in Case No. 86-812-Civ-J-14.

Appellant Logan McCall filed timely notices of appeal in both cases. The parties agree that Florida law governs the issues raised in these appeals. The Court will first address the appeal in Case No. 86-173-Civ-J-14.

The issue on appeal is whether a judgment lien creditor which subsequently purchases the property has priority over the holder of an unrecorded deed. Florida's recording statute provides, in pertinent part:

(1) No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law....

Section 695.01, Florida Statutes (1985).

Logan McCall does not challenge that Florida's recording statute applied to the 1979 transfer from Lowell McCall to Logan McCall. It is Logan McCall's position, however, that a judgment lien creditor does not have priority over the unrecorded transfer unless the creditor relied on record title when extending credit. Appellant would have the Court read the requirement of reliance for judgment lien creditors into the language of the statute. Resolution of this issue therefore depends on the Court's interpretation of this statute.

The Court is guided by the following principles of statutory interpretation. Under the "plain meaning" rule, the party challenging the plain meaning of the language of a statute must show some reason for departing from the otherwise unambiguous language. *Englewood Water District v. Tate*, 334 So.2d 626 (Fla. 2d DCA 1976). *See also United Guaranty Residential Ins. Co. of Iowa v. Alliance Mortgage Co.*, 644 F.Supp. 339, 340 (M.D.Fla. 1986).

[2] Florida's recording statute does not distinguish judgment lien creditors from other creditors. In addition, the statute does not contain any requirement of reliance on record title. Appellant's interpretation of the statute is unsupported by its language and, therefore, appellant has the

burden of demonstrating a reason for the Court to depart from the unambiguous language of the statute.

It is Logan McCall's position that Florida case law requires judgment lien creditors to show reliance on record title when extending credit to have priority over an unrecorded transfer. Appellant relies on *National Bank of Arcadia v. Savarese*, 101 Fla. 480, 134 So. 501 (1931), and its progeny.

In *Savarese*, Nellie R. Savarese held record title to the subject property. She conveyed this property to a third party. Thereafter, the third party intended to return the property to her but mistakenly recorded the title to the property in the name of John Savarese, Nellie's husband. In the meantime, the bank obtained a judgment against John Savarese and sought to levy upon the property now in his name. The court stated:

> [W]hile the beneficial owner of property may oftentimes be estopped from asserting his beneficial interest in the property against a bona fide judgment creditor, it is also generally recognized that a judgment creditor cannot have his debt satisfied out of property held by his judgment debtor under a resulting trust for another, no matter how completely his debtor has exercised apparent ownership over it, unless it is made to appear that it was on the faith of such ownership that the credit was given which resulted in the judgment sought to be satisfied.... As against those creditors who have relied upon a record title to property held by a debtor under a resulting trust, the cestui que trust will be estopped from asserting his claim....

*Id.*, 134 So. at 504.

The court held that because John Savarese had record title to the property under a resulting trust for Nellie Savarese, and the bank did not rely on this record when extending credit to him, Nellie was not estopped from asserting her interest in the property. Part of the court's rationale in creating this exception to the rule of estoppel for failure to record title was that

the *cestui que* trust, or true owner, was not to blame for the misleading record and did not have actual knowledge that title was recorded in another's name. Therefore, unless the creditor actually relied on the record, the equities weighed in favor of the *cestui que* trust under the resulting trust. *Id.*

The Florida courts have followed *Savarese* in requiring that the judgment creditor rely on record title to defeat the true owner in a resulting trust situation. *See, e.g., Hull v. Maryland Casualty Co.*, 79 So.2d 517, 518 (Fla.1954) (if record title is in a third person, such rights of the third person as against the judgment creditor are superior when the true owner is not estopped to assert the true title); *Laganke v. Sutter*, 137 Fla. 71, 187 So. 586 (1939); *Arundel Debenture Corp. v. Le Blond*, 139 Fla. 668, 190 So. 765 (1939). More recently, a Florida court required that a judgment creditor show reliance on record title to defeat the true owner in a resulting trust in *Estey v. Sharp Electronics Corp.*, 409 So.2d 217 (Fla. 4th DCA 1982), citing *Savarese*.

Florida courts have not required reliance on the public record when not faced with a resulting trust situation. In *Feinberg v. Stearns*, 56 Fla. 279, 47 So. 797 (1908), the court stated:

> The law is well settled that under our recording laws subsequent purchasers and creditors acquiring subsequent liens by judgment or otherwise without notice of a prior unrecorded deed will be protected against such unrecorded conveyance, unless the party claiming thereunder can show that such subsequent purchaser or creditor acquired his title or lien with notice of such unrecorded conveyance, and the burden of showing such notice is upon the party claiming under such unrecorded conveyance.

*Id.* at 798.

The facts in *Feinberg* are substantially similar to the facts in the present case. In 1902, the judgment creditor, Plant, obtained a judgment against the record owner, Mitchell. There was no discussion as to

whether this judgment was related to the property in question. The writ of execution on this judgment was issued and the creditor levied on the property on November 4, 1903. Plaintiff Feinberg, who was the assignee of the judgment, purchased the property at the sheriff's sale in December, 1903. The defendant received a deed for the property in September, 1902, but did not record the deed until the same day the writ of execution to satisfy the judgment was issued and the judgment creditor levied on the property.

The court stated that plaintiff Feinberg, as a purchaser, would not defeat the defendant because at the time of the sale, plaintiff had notice of defendant's deed. However, the judgment creditor, "at the time of the rendition of such judgment," had no notice or knowledge of any unrecorded transfer. The Court held that the judgment creditor had superior rights as against the holder of the prior unrecorded deed executed by the judgment debtor and, therefore, found in favor of the plaintiff as the assignee of the judgment.

While *Feinberg* was prior to *Savarese* and the cases requiring that a judgment creditor rely on the record in the resulting trust situation, it is significant that neither *Savarese* nor the cases relying upon it mention *Feinberg* in an attempt to distinguish it or to articulate a change in the law. Moreover, Florida courts after *Savarese* have either followed *Feinberg* or expressly distinguished *Feinberg* from the facts before them. *See, e.g., Bauman v. Peacock*, 80 So.2d 365, 366 (Fla.1955) (*Feinberg* did not control because judgment creditor had constructive notice of unrecorded interest in other party); *Freligh v. Maurer*, 111 So.2d 712, 715 (Fla. 2d DCA 1959) (*Feinberg* did not control because purchaser consummated the purchase of the property prior to creditor obtaining a judgment on her claim).

In *Michaels v. Albert Pick & Co.*, 158 Fla. 877, 30 So.2d 498 (1947), the court addressed the distinction between *Feinberg* and *Savarese*. Plaintiff entered unrecorded contracts to purchase the subject property. Plaintiff paid the amounts due under the contracts and recorded warranty deeds in June, 1929. In May, 1929, a creditor obtained a judgment against the seller and recorded that judgment the same day. The judgment creditor thereafter executed on the judgment and, pursuant to the sheriff's levy and sale, purchased the property in January, 1931. The judgment creditor thereafter sold the property to the defendant who sought to quiet title as to the plaintiff.

The lower court relied on *Feinberg*. Because the plaintiff's contract to purchase the property and deed were unrecorded at the time judgment was entered and the defendant had no notice of plaintiff's prior unrecorded deed, the lower court found for defendant. The Florida Supreme Court, upon review of the record, found that while plaintiff failed to record his contract and deed, the seller's agent recorded the agreements prior to the judgment. Thus, the Florida Supreme Court found that the judgment creditor had constructive knowledge of the prior transfers when the judgment was entered. The court then stated that when there is a contract to convey legal title, upon payment of the purchase price the vendee is regarded as the real beneficial owner, or true owner, and the vendor holds legal title as a trustee. The court then compared the interests of the judgment creditor vis-a-vis the true owner in the trust situation. The court cited *Savarese* for the proposition that:

> The judgment creditor cannot subject property held by judgment debtor as trustee to the satisfaction of a judgment merely because without knowledge of the claim of cestui que trust. The owner of the beneficial interest in property, not shown of record, may be estopped to assert interest against a bona fide judgment creditor or subsequent purchaser when the latter may reasonably have acquired substantial rights on the faith of the record.

*Id.* at 500. The Florida Supreme Court in *Michaels* stated that the judgment creditor did not rely on record title and, moreover,

had constructive knowledge of the claim of the *cestui que* trust because the contracts were recorded prior to the judgment. *Id.*

*Michaels* indicates the distinction between the *Feinberg* and *Saverese* situations. The Court holds, therefore, that the *Savarese* line of cases, upon which appellant relies, applies only in trust situations. Appellant concedes in the present case that he was not a beneficial owner with Lowell McCall holding title to the property in trust for him. Thus, the Court finds that Barnett, as judgment creditor, is not required to show it relied on record title when extending credit.

Appellant has not met its burden of demonstrating that the Court should deviate from the plain language of Florida's recording statute. Barnett recorded its judgment prior to Logan McCall recording his deed to the property. The Court finds that pursuant to Florida's recording statute, Barnett's interest in Lowell McCall's property is superior to that of Logan McCall. The Court, therefore, affirms the bankruptcy court's order in Case No. 86–173–Civ–J–14.

■ The Court will now address the appeal presented in Case No. 86–812–Civ–J–14. The appellant presents three issues for review in this appeal: (1) whether an owner of a joint tenancy who purchases a co-owner's interest but does not record the deed until after a creditor records a judgment lien against the co-owner's interest may avoid that lien by claiming a homestead interest in the property; (2) whether a debtor's motion to avoid a lien pursuant to Bankruptcy Rule 4003(d) is barred by the doctrine of *res judicata*, where the court has earlier determined the validity and priority of the lien in a Rule 7001(2) adversary proceeding; and (3) whether the bankruptcy court erred in holding that Barnett ac-

quired an ownership interest in the subject property at the September 11, 1985, foreclosure sale. The Court will address only the first issue.

Appellant Logan McCall claims that Lowell McCall's undivided one-half interest in the joint tenancy is protected from forced sale under Title 11 U.S.C. § 522(f) and Article X, Section 4, Florida Constitution. Under Section 522(f) of Title 11, "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b). . . ." Subsection (b) allows the debtor to exempt "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a . . . joint tenant to the extent that such interest as a . . . joint tenant is exempt from process under applicable non-bankruptcy law."

The primary question raised by this appeal is whether the subject property was "exempt from process" under Florida homestead law at the time that Logan McCall filed his petition in bankruptcy on June 17, 1985.[1] After a careful review of the applicable law and the facts of this case, the Court finds that the property was not exempt and that the bankruptcy court therefore properly denied Logan McCall's motion to avoid Barnett's lien.

Under Article X, Section 4 of the Florida Constitution, homestead property is deemed "exempt from forced sale under process of any court." Florida case law establishes that a homestead interest in property can only be achieved by a person who is both the owner of the property and the head of his or her household. *Bowers v. Mozingo*, 399 So.2d 492 (Fla. 3d DCA 1981); *In re Estate of Melisi*, 440 So.2d 584 (Fla. 4th DCA 1983).[2] Barnett does not

---

1. Because the focus of Section 522(b) is on the time of filing of the bankruptcy petition, the Court attaches no significance to the recording of the deed immediately prior to the foreclosure sale.

2. In November, 1984, the electors of the State of Florida approved an amendment to Article X,

Section 4 of the Florida Constitution which extended the homestead exemption to all "natural persons." This expansion of the homestead interest does not change the basic requirement of property ownership. *See Westcott v. Westcott*, 487 So.2d 1099, 1101 (Fla. 5th DCA 1986).

challenge Logan McCall's status as head of his household, but argues that the bankruptcy court's memorandum order of February 11, 1986, deprived Logan McCall of any claim to ownership of Lowell McCall's interest in the joint tenancy.

The Court agrees that the February 11, 1986, memorandum order effectively foreclosed any challenge by Logan McCall to Barnett's ownership of Lowell McCall's interest. In that order, the bankruptcy court held that, because Barnett recorded its judgment lien on Lowell McCall's interest prior to the recording of Logan McCall's deed, Barnett's lien was entitled to priority over Logan McCall's deed. Thus, when Logan McCall filed his bankruptcy petition, Barnett already held a claim to Lowell McCall's interest that was superior to Logan McCall's claim. Vis-a-vis Barnett, Logan McCall held *no* ownership interest in the subject property.

The appellant cites two Florida cases for the proposition that property may be claimed as homestead and exempted from forced sale even though the person claiming the homestead right does not hold record title. *Bessemer Properties v. Gamble*, 158 Fla. 38, 27 So.2d 832 (1946); *Heiman v. Capital Bank*, 438 So.2d 932 (Fla. 3d DCA 1983). According to the appellant, his "beneficial" interest in Lowell McCall's property is a sufficient ownership interest to enable him to claim the homestead exemption. As a basis for this purported accession to beneficial ownership, Logan McCall points to his receipt of the unrecorded deed from Lowell McCall in 1979.[3]

The Court finds that the cases cited by Logan McCall are clearly distinguishable from the present case. The Court likewise finds that Logan McCall does not provide sufficient facts to justify a finding that he held a beneficial interest in Lowell McCall's property at the time of the filing of his petition in bankruptcy.

In *Bessemer*, the defendant Gamble bought a parcel of land and executed the deed in favor of his wife. Later, he constructed a home on the property and made other expenditures for maintenance, insurance and taxes. In an action brought by a judgment lien creditor against Gamble to levy on the property, the Florida Supreme Court held that "[t]here is no question that Gamble was the head of the family and that his contributions to his wife's separate property gave him an equitable interest on the basis of which he could claim his homestead exemption." 27 So.2d at 833.

In *Heiman*, the plaintiff sued after her husband's death to have her condominium declared exempt from forced sale under Florida's homestead law. The trial court held that she could not maintain her husband's right to homestead protections as the head of the family because her husband did not hold record title in the condominium. Reversing this decision, the Third District Court of Appeal ruled that,

[h]omestead status may derive from the husband's beneficial interest as head of the family in a marital home titled in his wife's name.... [Plaintiff] is entitled to demonstrate that her husband retained a beneficial interest in the condominium sufficient to have the property designated homestead even though her name appeared on the deed."

In both *Bessemer* and *Heiman*, the courts applied Florida homestead law in the narrow context of a marital residence. The courts in both cases implicitly recognized that, although title may be held in one spouse's name, property purchased and maintained with the resources of both partners to a marriage is owned for the benefit of both partners.

In the present case, the appellant argues that he holds a beneficial ownership interest in the subject property by virtue of the unrecorded deed he received from Lowell McCall in 1979. The appellant provides no justification in law or policy, however, for allowing a mere unrecorded deed to give rise to a potential homestead interest. The

---

3. Logan McCall also appears to argue that his status as head of his household provides a basis for a finding of beneficial ownership. However, head-of-household status is irrelevant to the question of property ownership.

Court finds that any policy justification for recognizing beneficial ownership that may have existed in *Bessemer* and *Heiman* is absent from the present case.[4]

The Court has already concluded that the bankruptcy court properly decided on February 11, 1986, that Logan McCall's unrecorded deed was inferior to Barnett's claim to Lowell McCall's interest. Logan McCall cannot now come before this Court and, based on the same unrecorded deed, argue that his homestead interest defeats Barnett's claim. In light of Barnett's recorded judgment lien, Logan McCall had no ownership interest in the subject property at the time of filing his bankruptcy petition with which to assert a homestead interest.

For the reasons stated in this Opinion, the bankruptcy court's Memorandum Order Granting Defendant's Motion For Summary Judgment, entered February 11, 1986, and the bankruptcy court's Order of June 4, 1986, are affirmed.

**4.** Although the courts in *Bessemer* and *Heimer* provided little reasoning for their decisions to recognize the husband's beneficial ownership of property held in the wife's name, the Court presumes that the strong policies favoring contributions to the marriage justified their rulings. These decisions can also be explained by the unique treatment given tenancies by the entirety. In the present case, Logan McCall has not shown that he contributed any resources toward Lowell McCall's property, nor has he cited authority suggesting that contributions made outside of the marital home should give rise to beneficial ownership.