In re PARAMOUNT CITRUS,
INC., Debtor.

R. Jay Harpley, Trustee Appellee,

v.

A.G. Edwards & Sons, Inc., Appellant.

No. 8:00–cv–2094–T–17MAP.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 15, 2001.

John A. Anthony, Stephenie Mary Biernacki, Lara R. Fernandez, Gray, Harris, Robinson, Shackleford, Farrior, Tampa, FL, for A.G. Edwards & Sons, Inc.

David B. Marks, Law Office of Dennis Levine, Tampa, FL, for R. Jay Harpley.

*APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA*

KOVACHEVICH, Chief Judge.

### *ORDER ON APPEAL*

This cause is before the Court on appeal from both the order entered by the Bankruptcy Court on the 11th day of September, 2000, titled "Order Granting Trustee's Cross–Motion For Summary Judgment And Denying A.G. Edwards' Motion For Summary Judgment," and the final judgment entered by the Bankruptcy Court on the 13th day of September, 2000, titled "Final Judgment."

## I. *STANDARD OF REVIEW*

Jurisdiction over appeals from the final judgment, orders and decrees of the Bankruptcy Court is vested in the Federal District Courts. 28 U.S.C. § 158.

 This Court functions as an appellate court in reviewing a bankruptcy court's decision. 28 U.S.C. § 158. This Court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard of review. *See In re Patterson,* 967 F.2d 505, 508 (11th Cir.1992) (citing *In re Club Assocs.,* 951 F.2d 1223, 1228 (11th Cir.1992)). The Bankruptcy Court's conclusions of law are reviewed under the *de novo* standard of review. *See id.* A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed. *See United States v. U.S. Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Further, appellants are entitled to an independent, *de novo* review of all conclusions of law and the legal significance accorded to the facts. *See In re Noll,* 249 B.R. 568, 569 (M.D.Fla.2000).

## II. *STATEMENT OF FACTS AND PROCEDURAL HISTORY*

Paramount Citrus, Inc., (the Debtor) filed a Chapter 11 bankruptcy petition (the Petition) on August 16, 1999. Shortly thereafter, on October 8, 1999, the Chapter 11 bankruptcy petition was converted to a Chapter 7 liquidation, at which time R. Jay Harpley, (Appellee/Trustee) was appointed as the trustee.

From September 5, 1995 until September 30, 1999, Alan Thompson (Thompson) maintained a commodity trading account, in his own name, with A.G. Edwards & Sons, Inc., (Appellant) to trade commodities. Through this account, Thompson traded frozen orange juice concentrates futures. During this time, Thompson was a principal of the Debtor and was its sole or primary shareholder and officer. Within thirty days of the filing of the Petition, Thompson caused the Debtor to pay Appellant $16,015.00 from funds of the Debtor to fund margin calls in connection with his commodity trading account. The check was dated July 21, 1999 and was endorsed, "exchange for official [check] [check is noted by a check mark]," on that date. At the time the transfer was made, the Debtor did not have an account in its own name with Appellant, and Appellant was not a creditor of the Debtor. As a result of Thompson using the Debtor's funds to make the margin payments, he was able to retain the investments in the commodity trading account, which thereafter appreciated significantly.

On April 26, 2000, the Appellee, as trustee for the Debtor, filed an adversary proceeding against the Appellant by filing and serving a complaint to avoid fraudulent transfers and to recover the property transferred or its value pursuant to 11 U.S.C. §§ 548(a)(1)(B)[1] and 550. The Appellee alleged that the transfers were made while the Debtor was insolvent and that they were not on account of an antecedent debt owed by the Debtor before such transfers were made.

The Appellant filed its answer and nine affirmative defenses on May 19, 2000. Appellant alleged that it lacked the requisite intent to establish liability pursuant to Bankruptcy Code § 548(a)(1)(A); it provided reasonably equivalent value pursuant to Bankruptcy Code § 548(a)(1)(B)(i); the Debtor was not insolvent at the time of transfer nor did it become insolvent as a result pursuant to Bankruptcy Code § 548(a)(1)(B)(ii)(I); the Debtor was not undercapitalized pursuant to Bankruptcy Code § 548(a)(1)(B)(ii)(II); the Debtor was not intending to incur debts beyond its ability to pay pursuant to Bankruptcy Code § 548(a)(1)(B)(ii)(III); Appellant was entitled to rights afforded pursuant to Bankruptcy Code § 548(c); Appellant took "for value" in a manner that as a matter of law excuses liability to the Trustee; Appellant was not the initial transferee but was a good faith transferee and was entitled to all the protections afforded pursuant to Bankruptcy Code § 550(b); and profit realized from the funding must be computed to determine the extent of Appellant's rights pursuant to Bankruptcy Code § 550(e).

On May 22, 2000, Appellant filed a Verified Motion for Summary Judgment, which was verified by Brooks Courtney Turner, an employee of the Appellant. Appellant alleged that it was entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056 because it accepted the funds in good faith, without notice of the Debtor's financial situation, and it gave reasonably equivalent value with respect to the crediting of the commodity account for the sums received in response to the margin calls. Further, Appellant alleged that it falls under the protective terms set forth in Bankruptcy Code § 548(d)(2)(B), and it claimed that at no time at or before the application of the certified check did Appellant have any actual knowledge or belief relating to the solvency of the Debtor. Rather, Appellant alleged that it was un-

---

**1.** Previously referred to as 11 U.S.C. § 548(a)(2).

aware that Thompson obtained the funds from the Debtor.

In response to Appellant's Verified Motion for Summary Judgment, on August 14, 2000, Appellee filed a Response to Defendant's Motion for Summary Judgment and Cross–Motion for Summary Judgment. Appellee alleged that the transfer of the funds was fraudulent and can be avoided under Bankruptcy Code § 548(a)(1)(B). Appellee alleged that he should prevail under this section because the facts indicate that: (1) clearly, there was a transfer of an interest of the Debtor; (2) clearly, the transfer occurred within one year preceding the filing of the bankruptcy petition; (3) the Debtor received less than a reasonably equivalent value in exchange for this transfer; and (4) clearly, the Debtor was either insolvent on the date of the transfer, became insolvent as a result of the transfer, or was left with an unreasonably small capital after the fact. Appellee alleged that the only matter at issue was the third prong regarding whether the Debtor received reasonably equivalent value in exchange for the transfer. Appellee asserted that there is no evidence in the record to indicate that the Debtor received any benefit from these transfers. Appellee claimed that the key issue was "who" received that value and asserts that the record is clear that Thompson received the value, not the Debtor. Therefore, Appellee argued that Appellant's defense pursuant to Bankruptcy Code § 548(d)(2)(B) must fail as a matter of law.

After conducting a hearing on the motions above, the Bankruptcy Court entered a final judgment based upon the Order Granting Trustee's Cross–Motion for Summary Judgment and Denying A.G. Edwards Motion for Summary Judgment. The Bankruptcy Court ordered that the Trustee recover from the Appellant the sum of $16,015.00, with interest thereon, together with costs of this action. The Bankruptcy Court made the following findings: (1) there is no issue of material fact; (2) the Trustee met its burden of establishing that there was a transfer; (3) the transfer to Appellant was in the amount of $16,015 and was transferred to an account other than the Debtor's; (4) 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii)[2] applied to the transfer but would be limited to a transfer for the benefit of the debtor or under an obligation to the debtor; (5) the transfer was involuntarily made by a principal of the Debtor whereby the Debtor did not receive reasonably equivalent value in exchange for the transfer; (6) the quote/unquote safe harbor that may appear in 11 U.S.C. § 548(d)(2)(B) and considering it in pari passu with 11 U.S.C. § 548(a)(1) would suggest that it would have to be the Debtor's account to meet the requirements of the safe harbor. Therefore, the Bankruptcy Court granted the Trustee's/Appellee's Cross–Motion for Summary Judgment and denied Appellant's Motion for Summary Judgment.

Appellant appeals to this Court, seeking a reversal of the Bankruptcy Court's "Order Granting Trustee's Cross–Motion for Summary Judgment and Denying A.G. Edwards' Motion for Summary Judgment," and the final judgment.

## III. DISCUSSION

Appellant raises two issues on appeal: (1) Whether 11 U.S.C. § 548(d)(2)(B) operates to protect the Appellant with respect to a claim asserted by the Appellee pursuant to 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550(a) for constructive fraud; and (2) Whether the Bankruptcy Court erred by granting summary judgment in

---

**2.** Previously referred to as 11 U.S.C. §§ 548(a)(2)(A) and (B).

favor of Appellee upon a finding of insolvency pursuant to the same adversary proceeding and the same claims under 11 U.S.C. §§ 548(a)(2)(B) and 555(a) when it relied either upon (a) a late-filed affidavit in opposition to the motion for summary judgment that contained blatant self-evident hearsay, or (b) relied upon "presumptive insolvency" located in 11 U.S.C. § 547(f). This Court finds Appellant's allegations without merit.

### Standard for Summary Judgment

Federal Rule of Civil Procedure 56 is made applicable to bankruptcy cases through Bankruptcy Rules 7056 and 9014. Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue of material fact" since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of genuine issues of material fact. *See id.* That burden can be discharged by "showing ... that there is an absence of evidence to support the non-moving party's case." *See id.* at 323, 325, 106 S.Ct. 2548.

Issues of fact are "'genuine' only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in a light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Hayden v. First Nat'l Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir., 1979) (quoting *Gross v. Southern Railway Co.,* 414 F.2d 292, 297 (5th Cir.1969)).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of "nothing more than a repetition of his conclusional allegations," summary judgment is not only proper, but it is required. *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981).

### A. Whether 11 U.S.C. § 548(d)(2)(B) Operates to Protect Appellant.

Appellant alleges that the Bankruptcy Court erred by not applying the plain

meaning of 11 U.S.C. § 548. Further, Appellant alleges that 11 U.S.C. § 548(d)(2)(B) protects Appellant from liability to Appellee. Appellant claims that the Bankruptcy Court erred in basing its decision on a narrow interpretation of 11 U.S.C. § 548(d)(2)(B) when it stated that it would have to be the debtor's account in order to satisfy 11 U.S.C. § 548(d)(2)(B). Alternatively, Appellant alleges that it is protected under 11 U.S.C. § 550(b)(2).

*Protection Under 11 U.S.C. § 548(d)(2)(B)*

▮ The provisions of 11 U.S.C. § 548(a)(1)(A), (B) state that:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Further, 11 U.S.C. § 548(d)(2)(B) provides that:

(2) In this section-

(B) a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency that receives a margin payment, as defined in section 101, 741, or 761 of this title, or settlement payment, as defined in section 101 or 741 of this title, takes for value to the extent of such payment.

Appellant's argument that 11 U.S.C. § 548(d)(2)(B) protects it must fail as a matter of law because this section does not apply unless the debtor itself has the account with the commodity broker. The legislative history of 11 U.S.C. § 548(d)(2)(B) clearly supports this finding:

The intent of section 548(d)(2) is to provide that margin payments and settlement payments previously made by a [debtor] to a commodity broker...are nonvoidable transfers by the [debtor's] trustee. It is the intention of section 548(d)(2) to protect all margin payments **in the customer-broker-clearinghouse chain.** *See* Collier on Bankruptcy § 548.09[1] quoting 124 Cong. Rec. H11,097 (daily ed. Sept. 28, 1978); S17,-414 (daily ed. Oct. 6, 1978).

Thus, this section does not apply to the case at hand because the Debtor was not Appellant's customer. It is undisputed that Thompson, not the Debtor, opened an account with Appellant. There is no evidence that the Debtor had any account with Appellant, and no evidence in the record indicates that Appellant was a creditor of the Debtor. Further, the margin call was a demand by Appellant to Thompson, not the Debtor, to pay Appellant.

Thompson simply misappropriated the money from the Debtor, depleting the Debtor's estate to the detriment of the Debtor's creditors. Thompson was the sole beneficiary. The Debtor did not receive any benefit whatsoever for paying its principal's personal obligation. The Debtor had no contractual relationship with Appellant. This Court finds that the Bankruptcy Court did not err when it stated:

And the Court would find that the quote, unquote safe harbor that may appear in (2)(B) and considering it in pari passu with (a)(1), would suggest that it would have to be the debtor's account in order to meet the requirements of the safe harbor. Otherwise, what would happen in this particular case is that any transfer to a financial institution, commodity, or broker, forward contract merchant, stockbroker, financial institution, securities clearing agency that receives a margin payment, which is a broad payment, of course, would be protected even though it was not for the benefit of the debtor. There may be a conclusion there by that fact alone, that because the commodity broker or stockbroker received it for value under (2)(B) that notwithstanding that fact, the circumstance where the debtor is not the customer or not the obligor, it would not— or it would receive less than reasonably equivalent value even though the commodity broker would have taken it for value in that the debtor is not obligated on the transfer or obligation.

Therefore, this Court finds that 11 U.S.C. § 548(d)(2)(B) does not operate to protect Appellant in this case. In reading the provisions of 11 U.S.C. § 548 together, it is clear that Congress intended to preserve for the benefit of the estate transfers where the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." Congress intended to "insulate margin payments made by a **customer-debtor** to **his** broker in the ordinary course of business so as to avoid any unnecessarily harsh consequences to the broker as a result of his **customer's** seeking relief under title 11." *See* Collier on Bankruptcy § 548.09[1].

Clearly, 11 U.S.C. § 548(d)(2)(B) only applies when the debtor has an obligation to or contractual relationship with the commodity broker, stockbroker, etc. To interpret the statute otherwise would lead to absurd consequences, which would contradict current notions of sound policy and would run contrary to legislative intent. Under Appellant's interpretation, transfers would be protected where the debtor received no benefit at all and brokers would never be liable for a fraudulent transfer. Therefore, this Court finds that Appellant's argument under 11 U.S.C. § 548(d)(2)(B) is without merit.

*Protection Under 11 U.S.C. § 550(b)(2)*

■ Appellant's alternative argument that it is further protected, because it is an "immediate or mediate transferee" as set forth in 11 U.S.C. § 550, because it did not accept the original check, but instead the principal exchanged these funds into a certified check, is also without merit. Appellant alleges that, technically, it did not receive the funds directly from the Debtor but from the bank, and for this reason, Appellant is protected under 11 U.S.C. § 550(b)(2) which provides:

(b) The trustee may not recover under section (a)(2) of this section from—

(2) any immediate or mediate good faith transferee of such transferee.

Courts that have reviewed transfers involving certified funds have found that the "payee" of the certified funds is the "initial transferee." The Ninth Circuit in *Schafer v. Las Vegas Hilton Corp.*, 127 F.3d 1195 (9th Cir.1997) held that a Casino was the

"initial transferee" of a fraudulent transfer, despite the casino's argument that it received a certified check and not a check written of the debtor's account. Similarly, the Tenth Circuit in *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir.1996), found that the "payee" of certified funds was the "initial transferee" of a fraudulent transfer, not the bank which issued the certified check nor the debtor's principal who instructed the bank to issue the certified funds. In the case at hand, Appellant clearly was the "payee" of a certified check funded by money from the Debtor's bank account. Therefore, this Court finds that Appellant is the initial transferee, and Appellant's argument under 11 U.S.C. § 550(b)(2) is without merit.

**B. Whether the Bankruptcy Court Erred by Granting Summary Judgment in Favor of Appellee upon a Finding of Insolvency.**

■ Appellant raises an issue as to whether the Bankruptcy Court erred by granting summary judgment upon a finding of the Debtor's insolvency. Appellant raised the Debtor's insolvency as an issue on Appeal but failed to place into the record any evidence of the Debtor's solvency at the time of the transfer. Further, Appellant failed to even argue this point in its Brief. As this Court previously stated, the mere conclusory allegations of a party opposing summary judgment will not avoid summary judgment. Appellant has failed to provide this Court with any competent evidence of the Debtor's solvency at the time of the transfer of the funds. Therefore, after considering the entire record, this Court concludes that the evidence clearly supports the Bankruptcy Court's finding of insolvency and finds that the Bankruptcy Court did not err by granting the Trustee's Cross–Motion for Summary Judgment.

*Insolvency Evidenced By The Affidavit*

Appellant is precluded from objecting to the affidavit filed in support of the Trustee's motion for summary judgment because it failed to object to it in the court below. *See In re Hillsborough Holdings Corp.*, 176 B.R. 223 (M.D.Fla.1994) (to preserve an issue on appeal, the party must make a specific objection at trial); *Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1066 (9th Cir.1996) (citing *Fenton v. Freedman*, 748 F.2d 1358, 1360 (9th Cir. 1984)) (other citations omitted), *cert denied sub nom*, U.S., 117 S.Ct. 942 (1997) (failure of appellant to raise an objection as to the admission of evidence before the trial court precludes him from doing so for the first time on appeal).

According to the Affidavit of Scarlet Detjen, the comptroller of the Debtor, the Debtor's Balance Sheets and Income Statements for every month of 1999, and the 1998 Tax Returns, all support the finding of insolvency at the time of transfer. Moreover, the transfer took place within thirty days of filing the Chapter 11 bankruptcy petition.

*Presumptive Insolvency*

This Court will not address the Bankruptcy Court's finding of insolvency based on the presumption of insolvency set forth in 11 U.S.C. § 547(g) because the record is clear that the Debtor was insolvent at the time of the transfer. This Court has completely reviewed the record and finds that material issues of fact and law regarding the Debtor's insolvency do not exist. Since the record contains substantial, competent evidence regarding the Debtor's insolvency to support the Trustee's action against Appellant, and Appellant failed to place into the record any evidence of the Debtor's financial condition at the time of the transfer, this Court finds no reason to address this matter any further.

The Court, having considered all the issues on appeal and based on the foregoing, concludes that the Bankruptcy Court did not err in granting the Trustee's Cross–Motion for Summary Judgment and denying Appellant's Motion for Summary Judgment. Accordingly, it is

**ORDERED** that this Court **AFFIRM** the "Final Judgment" and "Order Granting Trustee's Cross–Motion For Summary Judgment And Denying A.G. Edwards' Motion For Summary Judgment" entered in the Bankruptcy Court Adversary No. 00–285. The Clerk of the Court is **DIRECTED** to enter judgment for Appellee in accordance herewith.