**Donna Lee WILLIAMS, Appellant,**

v.

**Anna Patricia ALOISI, Appellee.**

**No. 6:01–cv–470–Orl–31KRS.**

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 15, 2002.

Mary Kogut Equels, Holtzman, Krinzman, & Furia, Orlando, FL, for plaintiff.

Raymond John Rotella, Kosto & Rotella, Orlando, FL, for defendant.

## MEMORANDUM OPINION

PRESNELL, District Judge.

This cause comes before the Court on appeal from the Bankruptcy Court's Order entered on February 12, 2001, denying Commissioner Donna Williams' ("Commissioner") Motion for Partial Relief from Automatic Stay and overruling the Commissioner's Objection to Exemption.

I. *Standard of Review*

█ Under the Federal Rules of Bankruptcy Procedure, the Bankruptcy Court's findings of fact will not be set aside unless they are clearly erroneous. Fed. R.

Bankr.P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Paramount Citrus, Inc.*, 268 B.R. 620, 621 (M.D.Fla.2001) (citing *United States v. U.S. Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

■■■ Conclusions of law and the legal significance accorded to the facts are subject to *de novo* review. *In re Paramount Citrus*, 268 B.R. at 621. Equitable determinations by the Bankruptcy Court are subject to review under an abuse of discretion standard. *In re General Dev. Corp.*, 84 F.3d 1364, 1367 (11th Cir.1996). In reviewing a decision to lift an automatic stay under 11 U.S.C. § 362(d), the Eleventh Circuit Court of Appeals has held that such a finding "may be reversed only upon a showing of abuse of discretion." *In re Credit Life Corp.*, 184 B.R. 839, 840 (M.D.Fla.1995) (quoting *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1026 (11th Cir.), *cert. denied*, 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989)).

## II. *Background*

On April 26, 2000, Anna Patricia Aloisi ("Debtor" or "Ms. Aloisi") filed a Chapter 7 bankruptcy petition. Among the reasons for this filing was that Ms. Aloisi could not afford to pay her attorneys in a case before the U.S. District Court for the Middle District of Florida, *Williams v. Anna Patricia Aloisi et al.*, No. 6:98cv69.[1] The

events that led to the District Court and bankruptcy cases are as follows.

### A. *Debtor's Marriage to and Divorce from Lambert Aloisi*

The Debtor married Lambert Aloisi in 1988. During the marriage, Mr. Aloisi became an officer of National Heritage Life Insurance Company ("NHL"). While an officer of NHL, Mr. Aloisi apparently acted with a few other individuals inside and outside of NHL to scam millions of dollars from the company. While the scheme itself was somewhat complicated, for the purposes of this appeal the result of the thefts is more relevant. The Commissioner alleges that on or about January 26, 1994, Mr. Aloisi received $3 million as his share of the funds that were stolen.

On March 17, 1992, prior to Mr. Aloisi's receipt of this money, the Circuit Court for the Ninth Judicial Circuit in Florida entered a Final Judgment of Dissolution of Marriage in the Aloisi's dissolution proceedings. Because the parties had not been able to arrive at an agreement regarding the disposition of their assets and liabilities, the Court reserved jurisdiction on this issue.

On September 1, 1995, the Circuit Court entered its Final Judgment for Equitable Distribution of Marital Property, Alimony, and Payment of Attorney's Fees. In this order, the Circuit Court found that at the beginning of the marriage, neither Mr. Aloisi nor Ms. Aloisi had any assets of substantial value. However, during the marriage, Mr. Aloisi obtained employment with a substantial salary and purchased or obtained through his employment shares of stock in Tri Atlantic Corporation. After reciting how Mr. Aloisi exchanged this stock for Lifeco stock and then sold the stock for $3 million, the Circuit Court con-

---

1. That case, which has been administratively closed during the bankruptcy proceedings, is currently before the Honorable John Antoon II.

cluded that the proceeds from the sale of the stock were marital property. The Circuit Court was apparently unaware that the funds Mr. Aloisi received were allegedly stolen. The Circuit Court also found that Mr. Aloisi had attempted to secret this money from Ms. Aloisi by transferring the proceeds to his present wife, Anna Ducceschi Aloisi.[2] Accordingly, the Circuit Court awarded $1.5 million to Ms. Aloisi as lump sum alimony, as well as $5,000 per month in alimony.

Ms. Aloisi was unable to collect on the judgment. After supplemental proceedings in the Circuit Court, including a trial, the Circuit Court found that Mr. Aloisi had not disclosed his ownership of a condominium located at 147 Interlachen Place, in Winter Park, Florida, and in fact had engaged in a number of sham transactions to conceal its existence. The Circuit Court considered the condo to be marital property, since it was acquired during the marriage with marital funds. The Court specifically found that on or about February 8, 1994, from the $3 million Mr. Aloisi had received in the stock sale, $472,667.56 was used to pay off the mortgage on the condominium. Based on the Court's September 1, 1995 Order, the Circuit Court awarded Ms. Aloisi the condominium on November 26, 1996. The law firm that represented Ms. Aloisi, Kosto & Rotella, P.A., was awarded a charging lien on the condominium for their attorneys' fees.

In January 1997, Ms. Aloisi sold the condominium for $405,000 to a third party. From this sale, the Commissioner asserts that Kosto & Rotella received $203,719.25 based on their charging lien, and that Ms. Aloisi received $191,280.75. On April 8, 1998, Ms. Aloisi used these proceeds to purchase a home on Chichester Street in Orlando, Florida. In Ms. Aloisi's bankruptcy petition, she claims this home as exempt pursuant to Article X, Section 4, of the Florida Constitution.

### B. U.S. District Court Case No. 6:98cv69

Due to the thefts committed by Mr. Aloisi and other individuals, NHL failed. In 1994, Donna Williams, Commissioner of Insurance for the State of Delaware, was appointed receiver for NHL. On May 13, 1997, the Commissioner obtained a civil judgment against Mr. Aloisi in the amount of approximately $56 million.[3]

In 1998, the Commissioner filed suit in the U.S. District Court for the Middle District of Florida against a number of individuals who allegedly received some of the funds that Mr. Aloisi stole from NHL.[4] The defendants in this action include Anna Ducceschi Aloisi, some of Mr. Aloisi's children, as well as the Debtor and Kosto & Rotella, P.A.[5] With regard to the Debtor and her attorneys, the Commissioner asked for "equitable relief imposing a constructive trust on all proceeds traceable to the $3 million (including without limitation all proceeds within the possession of Anna Patricia Aloisi and/or Kosto & Rotella, P.A., such as proceeds obtained from the sale of the condominium) and enjoining the further transfer of same; and for such

---

**2.** Anna Ducceschi Aloisi is also named as a defendant in the District Court case, No. 6:98cv69. To avoid confusion, the Court will use Anna Ducceschi Aloisi's full name when referring to her.

**3.** *Williams v. Lambert Aloisi,* No. 6:95cv910 (M.D.Fla.), before the Honorable Anne C. Conway.

**4.** *Williams v. Anna Patricia Aloisi et al.,* No. 6:98cv69.

**5.** Ms. Aloisi and Kosto & Rotella, P.A. were added as defendants in the Amended Complaint that the Commissioner filed in June 1998.

other and further relief as this Court deems just and proper." (Vol. I, 7, Exh. A, Amended Complaint, at 19).[6]

The Commissioner's action before the District Court was stayed because of Ms. Aloisi's bankruptcy petition. Prior to the stay, the Commissioner obtained judgments against some of the defendants, including Anna Ducceschi Aloisi, Lambert Aloisi, Jr., and Alfred Aloisi, in the amount of $3 million each. With regard to the Debtor, both the Commissioner and Ms. Aloisi filed motions for summary judgment on April 3, 2000. Ms. Aloisi then filed her bankruptcy petition on April 26, 2000.

### C. *Ms. Aloisi's Bankruptcy Case*

The Bankruptcy Court noted that Ms. Aloisi filed her Chapter 7 bankruptcy case because she did not have the money to pay her attorneys to defend her in the District Court case. Ms. Aloisi's income consists of a small pension and monthly social security payments. While Ms. Aloisi has a $1.5 million judgment against Mr. Aloisi, Ms. Aloisi has only been able to obtain title to the condominium, and then only after great expense and effort. Ms. Aloisi received a discharge of all her debts on August 8, 2000. The Bankruptcy Court noted that no party, including the Commissioner, objected to the discharge.

The order that is on appeal is the Bankruptcy Court's order denying the Commissioner's motion for relief from the automatic stay and overruling the Commissioner's objection to the exemption. The Commissioner sought relief from the automatic stay of the District Court case, arguing that in the interest of judicial economy, the District Court should determine whether the Commissioner is enti-

tled to the proceeds from the sale of the condominium. The Commissioner also objected to Ms. Aloisi's claiming as exempt her home on Chichester Street in Orlando, Florida. The Commissioner argued that she was entitled to an equitable lien against Ms. Aloisi's home in the amount of the proceeds from the sale of the condominium that Ms. Aloisi received, since those funds were among the allegedly stolen monies from NHL and can be traced to the purchase of Ms. Aloisi's home.

The Bankruptcy Court rejected the Commissioner's request for a stay, finding that the Commissioner had not demonstrated "cause" to lift the stay under 11 U.S.C. § 362(d)(1). The Bankruptcy Court also overruled the Commissioner's objection to the exemption that Ms. Aloisi claimed in the bankruptcy proceeding. The Bankruptcy Court determined that the Commissioner was not entitled to an equitable lien against Ms. Aloisi's home, since the home was protected by the homestead exemption under the Florida Constitution. The Commissioner appeals to this Court, seeking a reversal of the Bankruptcy Court's order or a remand to the Bankruptcy Court for findings regarding when Ms. Aloisi knew of the theft of NHL funds.

### III. *Discussion*

The Commissioner raises three issues on appeal: (1) whether the Bankruptcy Court erred in construing settled Florida law regarding the equitable doctrines available as remedies for unjust enrichment by equating equitable liens and equitable subrogation, (2) whether the Bankruptcy Court erred in construing settled Florida law regarding Florida's homestead exemp-

---

**6.** The Commissioner contends that she did not specifically include a request for an equitable lien in her complaint because she did not know until after the lawsuit was filed that

Ms. Aloisi used the proceeds from the condominium to purchase her home on Chichester Street.

tion pursuant to Article X, Section 4 of the Florida Constitution, and (3) whether the Bankruptcy Court erred in its conclusions regarding the nature of the relief sought in the federal district court proceedings, resulting in an erroneous determination of just cause from the automatic stay.

### A. *Automatic Stay*

■ The Commissioner argues on appeal that the Bankruptcy Court erred in finding that the Commissioner only sought a money judgment in the District Court proceedings, and therefore the Bankruptcy Court erred in her decision not to lift the automatic stay.

During the hearing on the Commissioner's motion for relief from the automatic stay and objection to the exemption, the Commissioner agreed with the Bankruptcy Court that since the Bankruptcy Court could make a determination on the merits of her claim for equitable relief against Ms. Aloisi's home, there was no reason to lift the automatic stay.[7] Accordingly, the Bankruptcy Court did not abuse its discretion in denying the Commissioner's motion for relief from the automatic stay.[8]

### B. *Objection to Exemption*

The Commissioner also appeals the Bankruptcy Court's decision that the Commissioner was not entitled to an equitable lien on Ms. Aloisi's home, and that Ms. Aloisi's home was protected by the home-

stead exemption under Article X, Section 4, of the Florida Constitution.

The Bankruptcy Court assumed for the purposes of the bankruptcy hearing that the $ 3 million received by Mr. Aloisi was stolen from NHL (Vol. VII, Tr. 8/24/00, at 11–14). The parties then stipulated to the following facts regarding the tracing of these funds:

That the ex-husband, Lambert Aloisi, received three million dollars for the sale of Tri–Atlantic Corporation [or LifeCo] stock. That of that, $480,000 approximately was paid to Barnett Bank to pay down the mortgage on a Winter Park condominium which was at that time titled to Mr. Aloisi's name. That the debtor subsequently received a 1.5 million dollar judgment against Mr. Aloisi. That Mr. Aloisi had at that point deeded the Winter Park condominium to his private investigator and another person whose names are in the record.

That the debtor filed supplemental proceedings subsequently to avoid that transfer, succeeded in those efforts, received the condominium, sold the condominium and used a portion of those proceeds to purchase her homestead which is at issue today.

(Vol. VII, Tr. 8/24/00, at 19–20).

■ Under Florida law, equitable liens may be founded upon two bases: "(1) a

---

**7.** The Commissioner's counsel provided the following responses to the Bankruptcy Court's inquiries:

> THE COURT: So at this juncture really Ms. Williams' claim is directed more on the objection to the exemptions?
> MS. NELSON: Yes, that's the focus.
> THE COURT: There's really no reason to go back to the Federal Court because you are seeking a money judgment and that's going to be—that has been discharged. So really the only asset you're looking to attach which is the home.

> MS. NELSON: We would be very happy with an equitable lien against the property, so that would be fine.
> (Vol. VII, Tr. 8/24/00, at 9–10).

**8.** In light of this Court's determination that the Bankruptcy Court did not abuse its discretion in refusing to lift the stay, Ms. Aloisi's argument that the Commissioner's appeal is barred because she did not appeal the discharge is moot.

written contract that indicates an intention to charge a particular property with a debt or obligation; or, (2) a declaration by a court out of general considerations of right or justice as applied to the particular circumstances of a case." *In re Tsiolas,* 236 B.R. 85, 88 (Bankr.M.D.Fla.1999) (citing *Jones v. Carpenter,* 90 Fla. 407, 106 So. 127 (1925); *Ross v. Gerung,* 69 So.2d 650, 652 (Fla.1954)). In this case, the Commissioner sought an equitable lien on the second ground.

The Bankruptcy Court concluded, however, that the Commissioner was not entitled to an equitable lien. The Bankruptcy Court noted that Ms. Aloisi purchased her home with funds she received from a third party who had purchased the condominium. Determining that rights enforced through an equitable lien or equitable subrogation must be the same as whatever rights were originally held, the Bankruptcy Court found (Vol. I, 4, Findings of Fact and Conclusions of Law, at 11):

> In this case, the only original creditor who could have availed itself of an exception to the homestead exemption is Barnett because: 1) Barnett was the party allegedly paid with the proceeds of fraud; and 2) Barnett provided the original financing for the purchase of the Winter Park Condo. *See* Fla. Const. art. X, § 4(a). Therefore, the only rights [the Commissioner] could subrogate are the rights of Barnett, rights that were exercised approximately seven years ago. [Commissioner] cannot now "trace" the funds used to purchase the Debtor's homestead back through judgment awards and a series of transfers in hopes that an equitable lien will be imposed on the Debtor's new home because any "right" resulting from the

tracing would be different than Barnett's original right, the mortgage lien on the Winter Park Condo.

For these reasons, the Bankruptcy Court denied the Commissioner's request for an equitable lien.

The Bankruptcy Court further found that Ms. Aloisi had not been unjustly enriched. Instead, the Bankruptcy Court viewed Ms. Aloisi as a victim of Mr. Aloisi's fraud, and noted that Ms. Aloisi had expended great time and expense to undo the fraudulent transfers of the condominium to pursue her state court judgment. In the Bankruptcy Court's opinion, Ms. Aloisi and the Commissioner were essentially competing creditors, and Ms. Aloisi was more diligent.[9]

On appeal, the Commissioner contends that the Bankruptcy Court improperly equated an equitable lien with equitable subrogation, and then after concluding that the Commissioner was not entitled to equitable subrogation, concluded that the Commissioner was not entitled to an equitable lien. The Commissioner contends that because there is no dispute that Mr. Aloisi stole the $3 million from NHL, and that from this $3 million the mortgage on the condominium was paid off, a constructive trust follows the proceeds from the sale of that asset. The Commissioner further asserts that, even though Ms. Aloisi was not involved in the thefts, there is evidence that Ms. Aloisi knew about Mr. Aloisi's involvement before she obtained the $1.5 million judgment in state court. Therefore, the Commissioner contends that she is entitled to an equitable lien against Ms. Aloisi's home since it was purchased using the allegedly stolen funds.

---

9. Ms. Aloisi, however, does not appear to have suffered any economic loss or expense in obtaining the condo, because her counsel were paid from proceeds of the subsequent sale.

In the Florida Supreme Court's recent opinion on the Florida homestead exemption, *Havoco of America, Ltd. v. Hill*, 790 So.2d 1018 (Fla.2001), the Court clarified the circumstances under which an equitable lien against the homestead property would be appropriate. The homestead exemption provides that:

> There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person: (1) a homestead....

Fla. Const. art. X, § 4(a)(1). Reaffirming that the Court would strictly construe these exceptions to the homestead exemption listed in the Florida Constitution, the Florida Supreme Court stated that it has "invoked equitable principles to reach *beyond the literal language of the exceptions only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead.*" *Havoco*, 790 So.2d at 1028 (emphasis added). The Florida Supreme Court found that the exceptions listed in the Constitution do not include transfers of nonexempt assets to hinder, delay, or defraud creditors. *Id.* at 1028–30.

█ In light of the Florida Supreme Court's opinion in *Havoco*, the Bankruptcy Court did not need to make findings as to whether Ms. Aloisi purchased her home on Chichester Street with the purpose of defrauding, hindering, or delaying creditors. The Bankruptcy Court should, however, make findings about whether Ms. Aloisi knowingly used funds obtained through fraud to *purchase her homestead*. *See Havoco*, 790 So.2d at 1028; *In re Magpusao*, 265 B.R. 492, 502 (Bankr.M.D.Fla. 2001) (awarding an equitable lien against the homestead in the amount of the mortgage and down payment paid with embezzled funds, since the spouse "knowingly benefited from [his wife's] fraud"); *Jones v. Carpenter*, 90 Fla. 407, 106 So. 127 (1925) (granting equitable lien against homestead of company's former president who had embezzled corporate funds and made improvements on the homestead with those funds). While Ms. Aloisi did not steal the funds, she also cannot knowingly use stolen funds to purchase or invest in her home. *See In re Magpusao*, 265 B.R. at 502; *see also In re Mesa*, 232 B.R. 508 (Bankr.S.D.Fla.1999).[10]

---

**10.** The Court recognizes that the Bankruptcy Court appeared to be concerned that the only original creditor who could have availed itself of an exception to the homestead exemption was Barnett Bank, who held the mortgage on the Winter Park condominium. *See Bank Leumi Trust Co. of New York v. Lang*, 898 F.Supp. 883, 887–88 (S.D.Fla.1995); *Palm Beach Sav. & Loan Ass'n v. Fishbein*, 619 So.2d 267 (Fla.1993) (imposing through equitable subrogation a lien against home despite innocence of spouse since mortgages paid with fraudulently obtained loan would have otherwise encumbered home and wife therefore stood in no worse position).

However, the Florida Supreme Court has recognized an exception to the homestead exemption where the person claiming the homestead exemption used money obtained through fraud or egregious conduct to purchase or improve the home. *Havoco*, 790 So.2d at 1028; *see also Smith v. Smith*, 761 So.2d 370, 373 (Fla. 5th DCA 2000) ("[T]he Supreme Court has limited the exception allowing an equitable lien on homestead to those cases where the owner of the property has used the proceeds from fraud or reprehensible conduct to either invest in, purchase or improve the homestead."). In this case, Ms. Aloisi claims that her current home is exempt. If she knowingly benefitted from the stolen funds and used those funds to purchase her home, her home should not be exempt. *See In re Mesa*, 232 B.R. at 512–14 (recogniz-

■ The Bankruptcy Court did not make findings of fact as to when Ms. Aloisi knew about her husband's theft of NHL funds or that the stolen funds were used to pay the mortgage on the condominium. Rather, the Bankruptcy Court found that when the mortgage was paid to Barnett Bank, which was on February 8, 1994, Ms. Aloisi did not know of the condominium or participate in the decision to pay Barnett Bank the amount due on the mortgage. As a result, the Bankruptcy Court concluded that Ms. Aloisi did not know of Mr. Aloisi's interest in the condominium or the use of NHL's funds to satisfy the mortgage until after the divorce was final.[11] Since the determination of when Ms. Aloisi knew about the use of the stolen funds to satisfy the mortgage is dispositive to the Commissioner's request for equitable relief

against Ms. Aloisi's home, this Court finds it necessary to remand for a clarification or further determination of Ms. Aloisi's knowledge. If she knowingly benefitted from the fraud, the Commissioner may be entitled to equitable relief against Ms. Aloisi's home that was purchased with allegedly stolen funds.[12]

Since the homestead exemption does not bar the Commissioner's claim against Ms. Aloisi's home, on remand the Bankruptcy Court should consider whether the Commissioner is entitled to equitable relief. The Commissioner contends that she is entitled to an equitable lien, since a constructive trust arose when Mr. Aloisi stole money from NHL, and the Commissioner can trace the proceeds to Ms. Aloisi's purchase of her home.[13] Ms. Aloisi argues

ing that *Fishbein* may or may not be limited to "the narrow circumstances in which one creditor steps into the shoes of a predecessor which could have availed itself of an exception to the homestead exemption," but finding that *Fishbein* was not determinative where stolen money was used to invest in the improvements to Debtor's homestead and "Debtor was not innocent of wrongdoing, but knowingly assisted in and benefitted from the fraudulent scheme"); *see also In re Mart*, 106 B.R. 309, 311 (Bankr.S.D.Fla.1989) ("I agree with [claimant] that if it had proved that these properties [including the homestead] were financed to any significant extent with money traceable directly to the funds embezzled by [Debtor's brother], and if it had proved that [Debtor] furnished no consideration for those funds or had obtained them with actual notice that they had been embezzled from the third party, a resulting trust would be appropriate.").

11. A short time-line is helpful to the consideration of this case:

| | |
|---|---|
| March 17, 1992 | Divorce Decree |
| January 26, 1994 | Mr. Aloisi allegedly received $3 million in stolen funds |
| February 8, 1994 | Mortgage paid on Winter Park condo to Barnett Bank |
| September 1, 1995 | Circuit Court awards $1.5 million to Ms. Aloisi |
| November 26, 1996 | Circuit Court awards Ms. Aloisi the condominium |
| January 1997 | Ms. Aloisi sells Winter Park condominium |
| April 8, 1998 | Ms. Aloisi purchases home on Chichester Street |
| June 1998 | Commissioner files suit against Ms. Aloisi in the U.S. District Court, No. 6:98cv69. |

12. While it may seem unjust to permit the Commissioner to assert her claim against Ms. Aloisi's home, the Court notes that the Commissioner has offered not to foreclose on the lien while Ms. Aloisi lives in the home. This result would preserve the Commissioner's ability to collect money stolen from the NHL, while allowing Ms. Aloisi to remain in the home during her lifetime.

13. Ms. Aloisi contends that the Commissioner's equitable relief is limited to equitable subrogation, since the allegedly stolen funds were used to pay the mortgage on the condominium rather than to purchase the condominium. Ms. Aloisi argues that the Commissioner cannot therefore trace the proceeds of the sale of the condominium to other property.

Equitable subrogation operates to place the person whose money was improperly used in discharging a debt in the shoes of the original

that the Commissioner's rights have been extinguished since Ms. Aloisi's state court judgments awarding her $1.5 million and the condominium make her a judgment creditor and a bona fide purchaser for value who prevailed over the Commissioner's unrecorded interests in the condominium.

 In general, unrecorded rights such as constructive trusts or equitable liens are inferior to rights subsequently acquired without actual notice of earlier unrecorded rights. *See F.J. Holmes Equip., Inc. v. Babcock Bldg. Supply, Inc.,* 553 So.2d 748, 750 (Fla. 5th DCA 1989). If a person acquires title to property by giving value without notice of another's constructive trust or equitable lien, then the person is a bona fide purchaser who acquires title without being subject to the constructive trust or equitable lien. *See* Restatement of Restitution §§ 172, 173 (1937).

In this case, Mrs. Aloisi has not demonstrated that she gave "value." The state court judgments award Ms. Aloisi half of the money that Mr. Aloisi allegedly received as his share of the stolen funds, as well as the condominium where the mortgage was paid with the allegedly stolen money. Thus, Ms. Aloisi's claim to the money, upon which the judgments were entered, existed solely by reason of the fact that Mr. Aloisi had it. *See In re Marriage of Allen,* 724 P.2d 651, 658–59 (Colo.1986) (en banc) (holding that spouse did not give "value" by virtue of entering into property settlement agreement in the dissolution of marriage proceedings); *see also* Restatement of Restitution § 173 comment j ("[A] creditor who attaches the property or obtains and records a judgment or levies execution upon the property is not a bona fide purchaser, although he had no notice of the constructive trust....").[14]

---

creditor, such as a mortgagee, as if the mortgage had not yet been paid. *See U.S. Fidelity & Guar. Co. v. Ernest Constr. Co.,* 854 F.Supp. 1545, 1557 (M.D.Fla.1994); Restatement of Restitution § 207 (1937) ("Where a person wrongfully uses property of another in discharging an obligation of the wrongdoer to a third person or a lien held by a third person upon his property, the other is entitled to be subrogated to the rights which the third person had before the obligation or lien was discharged.").

Thus, equitable subrogation would have provided the Commissioner with an equitable lien in the amount of the mortgage paid with the allegedly stolen funds. *See* Restatement of Restitution §§ 162, 207 (1937). If the Commissioner did not have the opportunity to obtain an equitable lien before the condominium was sold, equity would follow the proceeds of the sale either through a constructive trust over the proceeds or an equitable lien on the property purchased with the proceeds. Otherwise, the seller of the property would receive a benefit in the amount of the stolen funds used to pay the mortgage. Since Ms. Aloisi obtained the condominium without giving value (and it is disputed whether she was

without notice of the Commissioner's interests), *see infra,* the Commissioner's rights may not have been extinguished. *See In re Marriage of Allen,* 724 P.2d 651 (Colo.1986) (en banc) (remanding to determine amount of equitable lien or constructive trust on the *products* of embezzled money that were in innocent spouse's possession as a result of the dissolution property settlement); *see also* Restatement of Restitution § 204 (1937); *id.* § 204 comment b ("If an innocent donee of property to which another is equitably entitled exchanges it for other property before he has notice of the equity, he is not unjustly enriched at the expense of the claimant if he restores to the claimant the value of the property which he received or if he surrenders the property which he acquired in exchange therefor."); *cf. Fishbein,* 619 So.2d at 269–71 (imposing equitable lien by reason of equitable subrogation against home awarded to innocent spouse in dissolution judgment, since otherwise spouse would receive windfall in the amount of fraudulently obtained loan used to satisfy the mortgages on the home).

**14.** The Colorado Supreme Court provided the following instructive analysis:

■ Moreover, even if Ms. Aloisi is a judgment creditor, a judgment creditor "cannot subject property held by judgment debtor as trustee to the satisfaction of a judgment merely because [she is] without knowledge of the claim of the cestui que trust." *Michaels v. Albert Pick & Co.*, 158 Fla. 877, 30 So.2d 498, 500 (1947); *see also F.J. Holmes Equip., Inc.*, 553 So.2d at 750 ("a bona fide judgment creditor cannot have his debt satisfied out of property held by the judgment debtor as trustee under a resulting trust")[15]; *see generally In re General Coffee Corp.*, 828 F.2d 699, 706–07 & n. 9 (11th Cir.1987) (determining in the context of priorities in bankruptcy that a constructive trust would prevail over a hypothetical ideal lienholder, reasoning that a constructive trust beneficiary "could have done nothing in advance to protect his interest from a future lienholder because a constructive trust is created by equity to prevent the unjust enrichment of one party at the expense of another"), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988).

■ Even if Ms. Aloisi could assert that she is a judgment creditor or a bona fide purchaser for value whose rights were superior to the Commissioner's unrecorded interests, Ms. Aloisi would also have to show that she was *without notice* of the origin of the stolen funds when she took title to the condominium. *See F.J. Holmes Equip., Inc.*, 553 So.2d at 750; *Republic of Haiti v. Crown Charters, Inc.*, 667 F.Supp. 839, 843–44 (S.D.Fla.1987); *see also In re Marriage of Allen*, 724 P.2d at 657. The Bankruptcy Court stated that Ms. Aloisi did not learn of Mr. Aloisi's conduct including paying the mortgage with stolen funds until after her divorce was final, but this statement does not allow this Court upon review to evaluate whether Ms. Aloisi was without notice when she obtained the condominium.

Therefore, on remand the Bankruptcy Court should determine whether the Commissioner is entitled to equitable relief based on the net proceeds Ms. Aloisi received from the sale of the condominium that she used to purchase her home. In considering the equitable arguments that the parties have made, the Bankruptcy Court may also consider Ms. Aloisi's argu-

We hold that even though Pamela Allen took property without knowledge of UMC's interest, she is not a bona fide purchaser because she did not give value for the property she received in the dissolution proceeding.... It is uncontroverted that Roger Allen embezzled money from UMC, used that money to invest in the family home and other property, and then subjected that property to division as marital property. The property was never truly a marital asset and should never have been subject to the Allens' property division negotiations. To allow Pamela Allen to gain legal and equitable title to the products of Roger's embezzlement simply by entering into a property settlement would be to enrich her unjustly at the expense of UMC....

There is no reason to enhance a spouse's interest in misappropriated property merely because the spouse subsequently decides to dissolve the marriage.

*In re Marriage of Allen*, 724 P.2d at 659 (reviewing the dissolution judgment); *see Maryland Cas. Co. v. Schroeder*, 446 S.W.2d 117 (Tex.Civ.App.1969) (holding that embezzler's wife who acquired property as part of the divorce judgment could not own the property free of the claims of the victim of the embezzlement unless the wife could show that embezzled funds were not used to purchase the property).

15. The beneficial owner may be estopped, however, "against a bona fide judgment creditor or subsequent purchaser when the latter may reasonably have acquired substantial rights on the faith of the record." *Michaels*, 30 So.2d at 500; *F.J. Holmes Equip., Inc.*, 553 So.2d at 750 (a bona fide judgment creditor will prevail where he *"extended the credit leading to the judgment* relying on ('on the faith of') the record title to the property being at that time in the name of the judgment debtor") (emphasis added).

ment that the Commissioner is barred from seeking relief because of laches and estoppel. Further findings concerning the Commissioner's and Ms. Aloisi's knowledge are necessary to this determination.[16]

## C. *Conclusion*

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Bankruptcy Court's Order of February 12, 2001 is **AFFIRMED IN PART** as to the automatic stay, but is **REVERSED AND REMANDED** for further findings or proceedings not inconsistent with this opinion as to the Commissioner's request for equitable relief against Ms. Aloisi's home.

16. Ms. Aloisi has raised other arguments in support of the Bankruptcy Court's order that were not addressed by the Bankruptcy Court. While Ms. Aloisi's arguments do not appear to have merit, the Bankruptcy Court may consider them on remand since further factual development would be helpful to their determination.

Ms. Aloisi has also argued that the Commissioner's appeal should be barred because she did not appeal the Bankruptcy Court's finding that Ms. Aloisi was a diligent creditor. The Bankruptcy Court found that "[e]ssentially, the parties are competing creditors. The

Debtor's diligence should not cause her to lose her last remaining asset simply because another creditor did not act as quickly." (Vol. I, 4, Findings of Fact and Conclusions of Law, at 12). The Commissioner did question on appeal whether Ms. Aloisi is even entitled to the proceeds from the condominium, since the mortgage was allegedly paid with stolen funds from NHL, and the Commissioner contends that there is evidence to support that Ms. Aloisi knew of the stolen funds before she took title to the condominium. The Court therefore finds Ms. Aloisi's argument to be without merit.