**In re THE ACADEMY, INC., Debtor.**

**The Academy, Inc., Plaintiff,**

**v.**

**The United States of America, Defendant.**

**Bankruptcy No. 8:02–bk–514. Adversary No. 8:02–ap–636–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 5, 2006.

Dennis J. LeVine, Dennis LeVine & Associates, P.A., Tampa, FL, Jonathan Stidham, Stidham and Stidham, P.A., Bartow, FL, for Plaintiff.

Patricia A. Willing, Office of the United States Attorney, Tampa, FL, for the United States of America.

Fred Marinucci, Office of General Counsel, United States Department of Education, Washington, D.C., for the Department of Education.

## ORDER ON UNITED STATES OF AMERICA'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPLEMENT TO MOTION FOR PARTIAL SUMMARY JUDGMENT

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Partial Summary Judgment, and the Supplement to Motion for Partial Summary Judgment, filed by the United States of America, on behalf of the United States Department of Education (USDE).

The Plaintiff/Debtor, The Academy, Inc. (the Debtor) filed a Response in Opposition to the USDE's Motion for Partial Summary Judgment.

In the Motion for Partial Summary Judgment and Supplement, the USDE seeks the entry of a summary judgment in its favor with respect to Count I, Count VI, Count VII, and Count VIII of the Amended Complaint filed by the Debtor. Count I of the Amended Complaint is an Objection to the USDE's Proof of Claim, Count VI is an action for an accounting, Count VII is an action for turnover of property of the estate, and Count VIII is an action for breach of contract against the USDE.

At the hearing on the Motion, Supplement, and Response, the Debtor consented to the entry of a summary judgment in favor of the USDE with respect to Count VII of the Complaint, provided that the judgment on Count VII is without prejudice to the Debtor's right to pursue the claims set forth in the remaining counts of the Amended Complaint. (Transcript, pp. 7–8).

### Background

The Debtor owned and operated a pilot training school, an aircraft maintenance school, and a culinary arts school at its campus located in Lakeland, Florida.

On or about November 15, 1999, the Debtor and the USDE entered into a "Program Participation Agreement." According to the Program Participation Agreement, the Debtor was permitted "to

participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965 as amended (Title IV HEA Programs)," as set forth in the Agreement. (Doc. 93, First Amended Complaint, Exhibit B).

By its terms, the Debtor's Agreement with the USDE was a "provisional" Program Participation Agreement. According to Erin Swanson–Hall, a Regional Director with the USDE, the Debtor's "provisional" status meant that it was permitted to receive Title IV funds for a probationary period of limited duration, and that its eligibility could be revoked for any material violation of Title IV. (Declaration of Erin Swanson–Hall, Doc. 84, Exhibit A, p. 5).

The Debtor submitted annual compliance audits to the USDE for the 1999 and 2000 fiscal years. (Doc. 84, p. 17; Affidavit of Bill Aitkenhead, Doc. 120, p. 1).

In April of 2000, the USDE conducted a program review of the Debtor. (Doc. 84, p. 18). According to the Debtor, a program review is essentially a "spot check audit of the school's financial aid program." (Doc. 120, p. 2).

On December 21, 2000, the USDE issued a Final Program Review Determination based on the review conducted in April of that year. (Doc. 84, Exhibit A, Attachment 12). The Determination contained a finding that the Debtor had over-awarded the sum of $956,645.00 in financial assistance to students based on incorrect grade levels. The Determination also attempted to establish the Debtor's liability to the USDE for the over-awards.

The Debtor submitted a timely appeal of the December 21, 2000, Final Program Review Determination, which was assigned Docket No. 01–09–SP before the USDE's Office of Hearings and Appeals. (Doc. 84, Exhibit A, Attachment 13; Doc. 120, p. 2).

Commencing on September 10, 2001, and continuing through September 14, 2001, the USDE conducted a second "program review" of the Debtor. (Doc. 84, Exhibit A, p. 8).

On September 14, 2001, the last day of the review, the USDE issued a Standard Reimbursement Notification Letter to the Debtor. (Doc. 84, Exhibit A, Attachment 4). Pursuant to the letter, the Debtor was informed that the USDE had transferred it "to a system of payment by reimbursement." Under the reimbursement system, the Debtor was "prohibited from certifying and/or disbursing FFELP funds without prior approval" from the USDE. In other words, according to the Debtor, "reimbursement status" meant that no payments were allowed to be made to the school until specific applications for reimbursement were approved by the USDE. (Doc. 120, p. 3).

On October 1, 2001, October 16, 2001, November 1, 2001, and November 28, 2001, the Debtor submitted four separate requests for payment under the reimbursement system. The first and second requests were rejected by the USDE on October 26, 2001, and November 13, 2001, respectively, based on errors noted by the USDE in the submissions. (Doc. 84, Exhibit A, pp. 12–14; Doc. 120, pp. 3–4).

No reimbursement was ever received by the Debtor as a result of any of the requests. (First Amended Complaint, Paragraph 57; Doc. 120, p. 4).

On November 27, 2001, the USDE issued a letter revoking the provisional certification granted to the Debtor under the Program Participation Agreement dated November 15, 1999. (Doc. 84, Exhibit A, Attachment 7). The revocation had the effect of terminating the Debtor's permission to participate in the student financial assistance programs under Title IV.

The Debtor appealed the revocation on December 14, 2001. (Doc. 84, p. 16).

The Debtor did not reopen its school in January of 2002 after the winter break. (Doc. 120, p. 6).

The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on January 11, 2002.

Three months later, in April of 2002, the Debtor and the USDE executed a Settlement Agreement in an effort to resolve the issues arising from the Final Program Review Determination dated December 21, 2000. (Doc. 84, Exhibit A, Attachment 13). Pursuant to the Settlement, the Debtor agreed that it owed the USDE the sum of $223,477.00 in connection with over-awards of financial assistance to student borrowers.

The Settlement Agreement was never approved by the Bankruptcy Court.

On April 25, 2002, the USDE issued a second "program review report" to the Debtor. (Doc. 84, Exhibit A, Attachment 2). The report was predicated on the program review conducted by the USDE seven months earlier, in September of 2001. The report stated that it contained "serious findings of noncompliance regarding The Academy's administration of the Title IV, HEA programs," and that its purpose was to identify the Debtor's potential liabilities to the USDE. The Debtor was given thirty days within which to respond to the findings contained in the report.

Although the Debtor initially requested an extension of time within which to respond, no response was prepared and delivered to the USDE. (Doc. 84, pp. 8–9).

On June 11, 2002, the USDE issued its Final Audit Determination to the Debtor. (Doc. 84, Exhibit A, Attachment 9). The Final Audit Determination was based on the Debtor's failure to submit a "close-out" audit of the Title IV funds that it had received in 2001. (Doc. 84, Exhibit A, pp. 16–17).

According to the Final Audit, the USDE had determined that the Debtor was liable to the USDE in the amount of $398,728.44 "since the required audit of the Pell Grant program funds has not been received," and also in the amount of $1,124,431.00 "since the required audit of the FFEL program funds has not been received." Consequently, the Debtor's total liability to the USDE as set forth in the Final Audit Determination amounted to $1,523,159.44.

One month later, on July 18, 2002, the USDE filed an Amended Proof of Claim (Claim Number 54) in the Debtor's Chapter 11 case. Claim Number 54 was filed as a general unsecured claim in the amount of $7,637,563.00. The Claim consists of the following components:

1. A claim in the amount of $1,180,309.00 for "closed school loan discharges."

2. A claim in the amount of $223,477.00 based on the settlement amount related to the December 21, 2000, Final Program Review Determination.

3. A claim in the amount of $714,500.00 based on the USDE's Final Audit Determination dated June 11, 2002.

4. A claim in the amount of $5,519,197.00 based on the USDE's "program review report" dated April 25, 2002.

(Amended Proof of Claim Number 54).

On August 15, 2002, the Debtor commenced this adversary proceeding by filing a Complaint against the USDE. The Complaint included an Objection to the USDE's Amended Claim, combined with five causes of action for affirmative relief.

On September 24, 2004, the Court entered a Partial Final Judgment on the Pleadings in the case. Generally, the Court entered a Final Judgment in favor of the USDE, and against the Debtor, on Count III (tortious interference with contractual relationships) and Count V (tortious interference with prospective business relationships) of the Complaint, and also entered a Judgment on Count II of the Complaint, finding that the USDE's claim, if allowed, shall not be subordinate to any interest asserted by the Debtor's shareholders. (Docs. 47, 48).

On July 8, 2005, the Debtor filed its First Amended Complaint. In the Amended Complaint, the Debtor added a Count (Count VIII) seeking damages based on the USDE's alleged breach of the Program Participation Agreement.

In the Motion for Partial Summary Judgment and Supplement that are currently under consideration, the USDE requests the entry of a summary judgment in its favor on Count I (Objection to the USDE's Claim), Count VI (Accounting), and Count VIII (Breach of Contract) of the First Amended Complaint.

### Discussion

Rule 56 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides for the entry of a summary judgment if the pleadings, discovery, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The court's focus in evaluating a motion for summary judgment is whether the pleadings and papers filed in the case create a genuine factual dispute, such that the issue must be presented to a fact-finder for resolution, or whether the submissions are so one-sided that the moving party must prevail as a matter of law. *In re Garcia*, 2002 WL 31409580, at *2 (S.D.Fla. Sept. 6, 2002).

Under Rule 56(c), the existence of a factual dispute precludes the entry of a summary judgment, if the factual dispute involves a matter that will affect the outcome of the litigation. In determining whether an issue exists regarding a material fact, the court must consider all of the evidence in the light most favorable to the nonmoving party. *In re Paramount Citrus, Inc.*, 268 B.R. 620, 624 (M.D.Fla.2001).

### A. Count I—Objection to Claim

As set forth above, the USDE filed an Amended Proof of Claim in the amount of $7,637,563.00.

Count I of the Debtor's Amended Complaint is an Objection to the USDE's Amended Proof of Claim.

In its Motion for Partial Summary Judgment, the USDE asserts that a summary judgment should be entered in its favor on Count I of the Amended Complaint, because (1) it is entitled to recover the cost of loans that were administratively discharged due to the closure of the Debtor's school, (2) it is entitled to recover the costs related to Title IV funds received by the Debtor since 1997 for which the Debtor did not provide adequate accountings, and (3) it is entitled to recover the amount of the Debtor's agreed liability under the December, 2000 program review report.

In response, the Debtor contends that the USDE's claims were unliquidated at the time that the Chapter 11 case was filed, and that the USDE assessed the liabilities postpetition in violation of the automatic stay. Consequently, the Debtor contends that the postpetition assessments are void as a matter of law.

Further, the Debtor objects to the USDE's claim on its merits, in part because the Debtor contends that the claim is based on estimates, not established damages. Consequently, the Debtor asserts that the claim is not allowable in its Chapter 11 case. (Doc. 117, p. 3).

### 1. Closed school loan discharges

■ The first component of the USDE's claim consists of the claim for "closed school loan discharges." The USDE defines this component as "the amount paid by the Department of Education (Department) to holders of Federally-reinsured Federal Family Education Loans (FFELs) that were made to students, and parents of students, who were in attendance at debtor when it closed, or who withdrew within 90 days of its closure, and who applied for, and received, closed school loan discharges. 34 C.F.R. § 682.402(d)." The USDE contends that the "amounts were paid by the Department pursuant to Title IV of the Higher Education Act of 1965(HEA), as amended, that authorizes the discharge of the loan obligations of these borrowers. 20 U.S.C. § 1087(c)." (Amended Proof of Claim Number 54, Summary, p. 1).

A list of the discharged loans, including the amount of each disbursement and the date of the disbursement, is attached as Exhibit 1 to the USDE's Amended Claim Number 54.

At the hearing on the Motion for Partial Summary Judgment, the Debtor did not appear to dispute the USDE's general entitlement to recover "closed school loan discharges" under the statute and regulations. Rather, the Debtor appears to dispute only the *amount* of this component of the USDE's claim ($1,180,309.00).

The basis for the Debtor's objection is that the USDE has not provided evidence that it actually paid the lenders the amounts set forth in Exhibit 1 to the USDE's Amended Proof of Claim. "[O]ne of the things that I don't think is in the record is evidence that the Government paid anybody." (Transcript, pp. 64–65). The Debtor's argument at the hearing, therefore, was essentially a demand for the USDE to establish this component of its claim by documentary evidence.

### 2. The December 21, 2000, Final Program Review Determination

The second component of the USDE's claim consists of the settlement amount related to the December 21, 2000, Final Program Review Determination ($223,-477.00).

In the Determination, the USDE found that the Debtor had "over-awarded" financial assistance to certain students, and the Debtor subsequently agreed to resolve this issue in a written Settlement Agreement dated April 23, 2002. According to the Settlement, the Debtor and the USDE had negotiated in good faith, and had agreed to settle "only the FPRD for FFEL overawards identified above by establishing the liabilities owed incident thereto." The Debtor agreed to a liability in the amount of $223,477.00. (Doc. 84, Exhibit a, Attachment 13).

At the hearing on the Motion for Partial Summary Judgment, the Debtor primarily contended that the Settlement Agreement has no effect because it was entered post-petition, and was not approved by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. (Transcript, pp. 60–62).

### 3. The Final Audit Determination dated June 11, 2002, and the Program Review Report dated April 25, 2002

The third and fourth components of the USDE's Amended Claim consist of claims

arising from the Final Audit Determination dated June 11, 2002, and the Program Review Report dated April 25, 2002.

According to the USDE, the "Final Audit Determination" component of the claim consists of the following:

> [D]ebtor's liability for the student financial assistance funds it received during its final fiscal year of participating in the Title IV, HEA programs, for which debtor did not account by providing an audit as required by Federal regulations and the HEA. 20 U.S.C. § 1094(c)(1)(A)(i); 34 C.F.R. § 668.26(b). As a result of its failure to account for these funds, debtor is liable to the Department in the amount of $973,005, which includes—with respect to unaccounted-for FFEL receipts—only the estimated actual loss to the Department on those loans.

(*Amended Proof of Claim Number 54*). After certain adjustments for duplicated costs, the final amount of this component of the USDE's claim is $714,580.00.

Second, according to the USDE, the "Program Review Report" component of the claim consists of the following:

> [L]iabilities caused by debtor's misfeasance in administering the Title IV, HEA program funds it received from the 1997–98 award year until its closure, as determined in a program review conducted by the Department staff and described in the attached program review report.... If debtor does not perform [self-audits], or performs them unsatisfactorily, debtor will be held liable for all of the funds for which it has failed to provide a proper accounting. The estimated total liability to the Department as a result of this claim is $3,318,324 in Pell Grant funds, and $3,397,355 in estimated actual losses on FFELs, for a total claim of $6,715,679, less an estimat-

ed $1,196,482 included in the claims stated in paragraphs 2 and 3.

(*Amended Proof of Claim Number 54*). The final amount of this component of the USDE's claim is $5,519,197.00.

It appears that these two components of the USDE's claim were unliquidated at the time that the Chapter 11 petition was filed, as contended by the Debtor. The USDE acknowledges on the face of the claim, for example, that the losses were only estimates, and that the amounts were subject to the Debtor's submission of an accounting for the funds that it had received. The Final Audit Determination and the Program Review Report were both issued after the Debtor had filed its Chapter 11 petition, however, so that the Debtor's responses or appeals clearly were due postpetition.

Further, the Court finds that factual issues exist regarding the merits of the claims.

Martin Niforth is a former Training Officer for the USDE and has more than twenty-six years of experience dealing with issues involving student financial aid. (Doc. 119, pp. 1–2). In an Affidavit filed by the Debtor in opposition to the USDE's Motion for Partial Summary Judgment, Niforth stated:

> 14. The greatest part of the funds USDE is requesting comes from 100% assessment of funds received by students at the Academy for periods covered by the Program Review report of April 25, 2002 and failure to perform the close-out audit.

> 15. There is no regulatory, statutory or other legal basis for the USDE to make this 100% assessment.

(Doc. 119, p. 4). The Debtor contends that the liability imposed by the USDE in the reports is not supported either by a con-

trolling statute or by any implementing regulation. (Transcript, pp. 44–45).

An issue exists in this case, therefore, as to whether the USDE is authorized to impose a "100 percent" liability against the Debtor based upon its failure to file required audits.

Additionally, the Debtor contests specific findings contained in the Final Audit Determination and the Program Review Report.

With respect to the Final Audit Determination, for example, it appears that a portion of the liability is based on the USDE's allegation that the Debtor "misspent" certain Title IV funds. The Debtor contends, however, that the only evidence of any improper expenditure "is the Debtor's failure to file audits or certain reports postpetition," and that it can account for all funds received by it under Title IV. (Transcript, pp. 51–52, 60).

Further, with respect to the April 25, 2002, Report, the USDE found that the Debtor improperly disbursed Title IV funds to students who did not have a high school diploma or its equivalency. (Doc. 84, Exhibit A, Attachment 2).

Bill Aitkenhead, a Managing Director and shareholder of the Debtor, stated in an Affidavit Regarding Program Review, however, that the USDE regulations "only require that the student attest to having completed high school or obtaining a GED," and that "the school is not required to obtain a copy of the document." With respect to one student cited in the Report, Aitkenhead stated that the Debtor "took reasonable steps to authenticate a high school original diploma, even when the school board issued the document themselves in error." With respect to another student, Aitkenhead stated that "the Department of Education within the Commonwealth of Puerto Rico issued his GED certified score report with original authen-

tic document stamps," but that verified records are difficult to obtain from Puerto Rico's Department of Education. (Doc. 118, p. 2).

Issues of fact exist, therefore, regarding specific findings contained in the USDE's reports. Since these findings form the basis for the "estimates" included in the USDE's Amended Proof of Claim, the Court determines that issues of fact also exist as to the specific amounts claimed by the USDE as a result of the Final Audit Determination dated June 11, 2002, and the Program Review Report dated April 25, 2002.

### 4. Conclusion as to Count I

The USDE's Motion for Partial Summary Judgment should be denied as to Count I of the Amended Complaint. The Court cannot determine as a matter of law that the USDE is entitled to a judgment in its favor on any component of the USDE's Amended Proof of Claim.

### B. Count VI—Accounting

■ In Count VI of the Amended Complaint, the Debtor alleges that the USDE had converted the "earned pipeline" to its benefit. The "earned pipeline" is defined as the amounts "due for student loan program funds properly payable to the Debtor for educational services already rendered to the Debtor's students." Consequently, the Debtor requests an accounting "of all value derived by the USDE from its continued withholding of the student loan funds rightfully belonging to the Debtor." (Doc. 93, Paragraphs 18, 46–48).

In its Motion for Partial Summary Judgment, the USDE asserts that it is entitled to a summary judgment on Count VI because it never had possession or control of the funds that are the subject of the request for an accounting. (Doc. 84, p. 16).

At the hearing on the Motion for Partial Summary Judgment, the Debtor asserted that it has the right to a common law accounting of the "earned pipeline" on two grounds under Florida law. First, the Debtor contends that it is entitled to an accounting because of the complicated nature of the transaction. Second, the Debtor contends that the USDE acknowledged that a fiduciary relationship existed between the USDE and the Debtor, and that the existence of such a trust relationship constitutes an alternative ground to require an accounting. (Transcript, pp. 45–46).

Although it is true that the USDE acknowledged the existence of a fiduciary relationship between the parties at the hearing, the USDE's contention was that the *Debtor* [not the USDE] served as the fiduciary of the trust, and that the USDE was simply a beneficiary of the trust. Accordingly, the USDE's position was that the *Debtor* [not the USDE] was obligated, as the fiduciary of the funds, to provide an annual audit to the trust beneficiaries. (Transcript, pp. 31–34).

The Court cannot determine the relative rights to an accounting based on the record presented. Specifically, the Court cannot determine whether the USDE received any benefits, or incurred any expenses, from its relationship with the Debtor for which it should be required to account. Further, the Court cannot determine whether any such requirement to account is affected by the Debtor's obligation to provide annual audits under the Program Participation Agreement.

Under these circumstances, the Court cannot determine as a matter of law that the USDE is entitled to a judgment in its favor with respect to the Debtor's action for an accounting. The USDE's Motion for Partial Summary Judgment is denied as to Count VI of the Amended Complaint.

### C. Count VIII—Breach of Contract

■ In Count VIII of the Amended Complaint, the Debtor alleges that the USDE represented to it that "it would be reimbursed for tuition payments due, pursuant to applications properly submitted to USDE," that the Debtor relied on the representation by investing "substantial sums" in the continued operation of the school, and that the USDE failed to reimburse the Debtor after it submitted applications for payment. (Doc. 93, Paragraphs 55–57).

The parties appear to agree that the Debtor submitted four separate Requests for Reimbursement to the USDE in October and November of 2001. (Doc. 111, Exhibits J, K, L and M). The Requests were submitted pursuant to the Standard Reimbursement Notification Letter issued by the USDE to the Debtor on September 14, 2001. (Doc. 84, Exhibit A, Attachment 4).

Two of the Requests were rejected by the USDE. No official action was taken on the other two requests, possibly because of the revocation of the Program Participation Agreement on November 27, 2001. (Doc. 84, Exhibit A, pp. 12–14).

In any event, the parties also agree that no reimbursement was ever received by the Debtor as a result of its four Requests for Reimbursement. The breach of contract action set forth in Count VIII of the Debtor's Amended Complaint is predicated on the USDE's failure to approve the reimbursement requests.

In its Supplement to Motion for Partial Summary Judgment, the USDE contends that the requests submitted by the Debtor did not comply with the Standard Reimbursement Notification Letter and the regulations cited therein, and that the USDE was therefore justified in disapproving the

requests. Accordingly, the USDE contends that it is entitled to the entry of a summary judgment on the Debtor's breach of contract claim.

The Court finds that genuine issues of material fact exist with respect to whether the USDE's failure to approve the requests for reimbursement constitutes a breach of the parties' agreement.

The USDE filed the Affidavit of Erin Swanson–Hall (Swanson–Hall) to support its position that its failure to approve the requests was justified.

In connection with the Debtor's first request, Swanson–Hall, an Area Case Director for USDE from 1999 until 2003, stated that the USDE "found errors or other shortcomings in seven files, or 44% of those reviewed." (Doc. 84, Exhibit A, p. 12). Swanson–Hall wrote in a letter to the Debtor that the request was rejected in its entirety because of inadequate documentation in the following categories: (1) "conflicting documentation" regarding the income of two students; (2) "incomplete verification" regarding the income of two students; (3) undocumented "professional judgment" regarding the dependent status of one student; and (4) unsigned "free applications for Federal Student Financial Aid" regarding three students. (Doc. 84, Exhibit A, Attachment 5).

In connection with the Debtor's second request, Swanson–Hall stated that the request did not include the required Standard Form 270, or "certification of the responsible school official attesting to the accuracy of the documents submitted," and that the USDE found "errors or other shortcomings in 100% of these files." (Doc. 84, Exhibit A, p. 13). Swanson–Hall wrote in a letter to the Debtor that the request was rejected in its entirety because of inadequate documentation in the following categories: (1) "conflicting documentation" regarding nine students; (2)

"incorrect loan pro-ration" regarding five students; (3) "incomplete entrance interview" for twelve students; (4) "attendance records (missing)" for eleven students; (5) "Institutional Student Information Record transaction issues" regarding five students; and (6) "incomplete verification" regarding four students. (Doc. 84, Exhibit A, Attachment 6).

In connection with the Debtor's third request, Swanson–Hall stated that the request did not include the Standard Form 270, and that the USDE found errors in ten out of thirteen, or 77 percent, of the student files reviewed. (Doc. 84, Exhibit A, pp. 13–14).

Based on the errors allegedly found in the packages, the USDE contends that it was justified in rejecting the Debtor's reimbursement requests.

In response, the Debtor submitted the Affidavit of Martin Niforth (Niforth), a former training officer for the USDE with twenty-six years of experience in issues involving student financial aid. (Doc. 119, pp. 1–2).

First, Niforth appears to assert that the USDE should not have rejected the Debtor's October 1, 2001, reimbursement request in its entirety based on the calculated error rate of 44 percent. Specifically, Niforth states that "prior to October, 2005, the USDE had no rule or regulation that provided that an error rate of 40% or more would require the USDE to reject 100% of the reimbursement requests in the group." (Doc. 119, Paragraph 28). (See also, Doc. 120, Affidavit of Bill Aitkenhead, Paragraph 34).

Second, Niforth states that the "error rate found by the USDE was incorrect" with respect to the Debtor's first reimbursement request, because the USDE did not note that a student had changed his answer on a form. Consequently, Niforth

concludes that the request contained "6 files [instead of 7] with an error out of 16 for a 37.5% error rate. Using the U.S. Department of Education policy for this school the ten unquestioned files should have been paid on (7372)." (Doc. 119, Paragraphs 29–30).

Finally, Niforth states that he reviewed the third reimbursement request submitted by the Debtor, and "identified errors (or could not verify whether or not there were errors) in only three of the 13 files," instead of ten out of thirteen files, as represented by the USDE. (Doc. 119, Paragraphs 31–32). Consequently, Niforth concludes that a "finding of errors in only 3 out of 13 files is an error rate of 23%. There were ten (10) files with no errors. Therefore, according to its own 'rule of thumb,' the USDE should have reimbursed The Academy on 10 of these students." (Doc. 119, Paragraph 33).

The Court has reviewed the requirements for Reimbursement Submissions set forth in the Standard Reimbursement Notification Letter sent to the Debtor on September 14, 2001. (Doc. 84, Exhibit A, Attachment 4). The Court has also considered the competing Affidavits of Swanson–Hall and Niforth regarding the Debtor's compliance with the requirements contained in the Letter.

Based on its review, the Court finds that genuine issues of material fact exist regarding whether the USDE was justified in rejecting the Debtor's requests for reimbursement because of errors in the packages, or whether the USDE breached its agreement with the Debtor by failing to approve properly submitted reimbursement requests. Accordingly, the USDE's Motion for Partial Summary Judgment should be denied with respect to Count VIII of the Amended Complaint.

## Conclusion

The USDE seeks the entry of a partial summary judgment in its favor on Count I, Count VI, Count VII, and Count VIII of the Amended Complaint filed by the Debtor. The Debtor consents to the entry of a summary judgment in favor of the USDE on Count VII (turnover of property of the estate).

As to Count I (the Debtor's Objection to the USDE's Claim), the Court finds that the USDE's Motion should be denied because issues of fact exist regarding the estimated amounts claimed by the USDE as a result of the Final Audit Determination dated June 11, 2002, and the Program Review Report dated April 25, 2002.

As to Count VI (an accounting), the USDE's Motion should be denied because issues of fact exist regarding whether the USDE received any benefits, or incurred any expenses, from its relationship with the Debtor for which it should be required to account.

Finally, as to Count VIII (breach of contract), the USDE's Motion should be denied because issues of fact exist regarding whether the USDE was justified in failing to approve the Debtor's requests for reimbursement because of errors in the reimbursement packages, or whether the USDE breached its agreement with the Debtor by failing to approve properly submitted reimbursement requests.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Partial Summary Judgment filed by the United States of America, United States Department of Education, is granted in part and denied in part as set forth in this Order.

2. The Motion is granted with respect to Count VII of the Amended Complaint, and a Final Summary Judgment shall be

entered in favor of the Defendant, the United States of America, Department of Education, and against the Plaintiff, The Academy, Inc., on Count VII of the Amended Complaint.

3. The Motion is denied as to Count I, Count VI, and Count VIII of the Amended Complaint.